No. 82-83

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

IOWA MANUFACTURING COMPANY,

Plaintiff and ~~Appellant~~, *Respondent*

vs.

JOY MANUFACTURING COMPANY,

Defendant and ~~Respondent~~. *appellant.*

---

Appeal from: District Court of the Second Judicial District,
In and for the County of Silver Bow
Honorable Arnold Olsen, Judge presiding.

Counsel of Record:

For Appellant:

Henningsen & Purcell, Butte, Montana
Mark Vucurvich argued, Butte, Montana

For Respondent:

Corette, Smith, Pohlman and Allen, Butte. Montana
Gregory Black argued, Butte, Montana

---

Submitted: June 7, 1983

Decided: September 19, 1983

Filed: **SEP 2 0 1983**

*Ethel M. Harrison*

---

Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Joy Manufacturing Company (Joy) appeals from a judgment entered on a $50,000 jury verdict in favor of Iowa Manufacturing Company (Iowa) in the District Court of the Second Judicial District, Silver Bow County. The judgment also awarded to Iowa $14,349.40 in attorneys' fees.

We affirm.

On February 3, 1971, Jim Gilman Excavating Company (Gilman) purchased from Iowa an asphalt mixing plant for its operation in Butte. The plant included pollution control equipment which was designed and/or manufactured by Joy. In connection with Gilman's order, Iowa guaranteed that the particulate emissions from the plant would not exceed the amount allowed by Montana law as of February 1971 (61 lb./hr.). Iowa's guarantee to Gilman was made in reliance upon Joy's guarantee to Iowa that the particulate emissions would not exceed 38 lbs./hr.

The asphalt mixing plant was shipped to Gilman in June, and was operating by late August 1971. In 1973, a controversy arose between Gilman and Iowa which was based upon the late delivery of the plant. The controversy was resolved, and Gilman executed a release. Gilman testified in a deposition, however, that the release did not include any claims for air pollution problems.

In 1975, the Montana Department of Health and Environmental Sciences (DHES) began questioning Gilman concerning pollution problems and complaints. On October 6, 1975, the DHES served a "Notice of Violation" on Gilman. Thereafter, an independent testing firm conducted several tests to determine the particulate emissions from the Gilman plant. Based upon these tests, the DHES issued an "Order to

2

Take Corrective Action" on November 22, 1976. Another test, conducted on October 19, 1977, showed that the average emissions from the Gilman plant were 62 lbs./hr. Following this test, the DHES wrote a letter to Gilman stating that he could start up his plant only to demonstrate compliance. Gilman then purchased different pollution control equipment and filed a complaint against Iowa to recover damages in excess of $71,000 for negligence, breach of warranty, and strict liability.

In responding to the allegations of the complaint, Iowa raised the affirmative defenses of statute of limitations and release. Iowa then gave Joy the opportunity to defend and indemnify Iowa in the action. When Joy declined to do so, Iowa filed a third party complaint against Joy, alleging that Joy designed the pollution control equipment and guaranteed that the equipment would meet the Montana Air Pollution Standards. As a result of this alleged breach of warranty, Iowa sought to be indemnified by Joy.

Iowa then filed a motion for summary judgment in the underlying Gilman action, seeking a ruling on the defenses of statute of limitations and release. Joy joined in Iowa's motion for summary judgment, which was denied by the District Court.

Approximately one week prior to trial, Iowa settled the underlying Gilman action for $50,000. Joy was given the opportunity to participate in this settlement, but it declined to do so.

Thereafter, the action proceeded to trial on the third party complaint. Before trial, Iowa filed a motion in limine asking that the District Court prohibit Joy from producing evidence of the release entered into between Iowa and Gilman in 1973; and also to prohibit any testimony relating to the

3

defense of the statute of limitations as between Iowa and Gilman. The District Court granted Iowa's motion in limine with respect to the release. The District Court also ruled as a matter of law, that as between Gilman and Iowa the statute of limitations commenced from the date of discovery of the defect.

During the trial, Ronald Dunmire, an Iowa employee, testified that Iowa had given Gilman a specific warranty that the plant would meet Montana's air pollution control standards. On cross-examination of Dunmire, Joy attempted to place into evidence a copy of Iowa's Standard Air Pollution Control Performance Warranty. Iowa objected to the admittance of this document because the standard warranty was not given to Gilman and therefore was not relevant. Iowa's objection was sustained. Thereafter, Joy made an offer of proof and attempted to show that Dunmire's testimony was contrary to Iowa's answer to interrogatory no. 34. In the interrogatory, Gilman asked Iowa to describe all conversations between Iowa and Gilman relating to the warranty. Iowa responded in the interrogatory that in one conversation, an Iowa employee represented that "the Plant would meet the State of Montana Air Pollution Standards subject to certain limitations such as contained in Iowa Manufacturing's standard air pollution control performance warranty in effect at the time of sale." Joy argued in its offer of proof that the standard warranty should be admitted "for the purpose of consideration by the jury as to whether or not Mr. Dunmire's testimony indicated that the warranty given was in lieu of the standard warranty." Iowa responded to Joy's offer of proof by stating that interrogatory no. 34 was in response to what conversations were held regarding the warranty. The ultimate warranty given to Gilman did not

4

include the terms of the standard warranty. In this case, Iowa argued, the specific express warranty should displace any inconsistent implied warranties. The District Court agreed with Iowa, and again ruled that the standard warranty was irrelevant.

The case was submitted to the jury on the question of whether the damages suffered by Gilman were caused by a breach of warranty of Joy entitling Iowa to indemnification for the sum paid to Gilman. Thereafter, a jury returned a verdict of $50,000 for Iowa. Joy's motion for new trial was denied, and the District Court awarded $14,349.40 in attorney fees to Iowa.

Joy raises five issues on appeal:

1. Had the statute of limitations for this action expired when Iowa filed its complaint against Joy?

2. Did Iowa sustain its burden in proving that the settlement with Jim Gilman Excavating, Inc. (Gilman) was reasonable and that Iowa was liable to Gilman?

3. Did the District Court err in refusing to admit into evidence Iowa's Standard Air Pollution Control Performance Warranty?

4. Did the District Court err in granting Iowa's motion in limine with regard to a release and the statute of limitations?

5. Did the District Court err in refusing to instruct the jury on active/passive negligence in this action?

Joy argues that Iowa's cause of action was barred by the applicable statute of limitations for breach of warranty, section 30-2-725, MCA, since Iowa did not bring the action against Joy for more than four years after Joy tendered the air pollution equipment. Joy points out that a warrantor cannot be an indemnitor based on the warranty beyond the

5

temporal scope of that warranty. This argument is well taken. To hold otherwise would allow a vendee to circumvent the warranty statute of limitations by retaining the goods beyond the term of the statute of limitations and then sell it with his own warranty and, having made good on his own warranty, hold his vendor upon a claim of indemnity. Acc. L.E. Talcott & Sons, Inc. v. Aurora Corp. (D. Del. 1959), 176 F.Supp 783, 786.

However, Joy fails to recognize that the trial court properly ruled that section 30-2-725, MCA, does not bar Iowa's claim on the warranty or on indemnity. That section provides in part:

> "(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. * * *
>
> "(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

Where a vendor warrants the quality or specifications of goods, such warranty is breached when tender of delivery is made, absent explicit extension of the warranty to a future date. But, where a vendor warrants the _performance_ of goods, that warranty necessarily contemplates a reasonable _period of performance_ during which the defect or failure would manifest itself. By letter dated March 5, 1971, Joy warranted that the particulate ommissions from the Cedar Rapids plant would not exceed 38 pounds per hour (0.25 grams per standard cubic foot dry) when the equipment is operated in accordance with specified design conditions. Thus the warranty contemplates _operation_ of the equipment for at least

6

as long as would be necessary for the breach to be discovered.

The trial court, in its ruling on the motion in limine, did not foreclose the statute of limitations defense. The court merely ruled that the statute ran from discovery and not from delivery. This ruling was correct.

We are unable to rule, as a matter of law, that the defect was or should have been discovered more than 4 years before the initiation of this action. Joy's next substantive argument is that Iowa failed to prove that Iowa was liable to Gilman and that the settlement was reasonable.

Since Iowa settled the underlying action with Gilman, it was required to prove that it was liable to Gilman and that the settlement was reasonable. 3A Frumer & Friedman, Products Liability §44.10(2). There is a divergence of authority on whether an indemnitee must prove actual or merely potential liability when it settles the underlying action with a third party. One solution was set forth in Morrisette v. Sears, Roebuck & Co. (N.H. 1974), 322 A.2d 7, 10, wherein the New Hampshire court stated:

> "'If the indemnitor approves the settlement or defends unsuccessfully against the original claim, he cannot later question the indemnitee's liability to the original claimant. If the indemnitor declines to take either course, then the indemnitee will only be required to show potential liability to the original plaintiff in order to support his claim over against the indemnitor.' (citation) ... In the event that no offer is made to the indemnitor to either approve or defend, then the indemnitee should have the burden of showing actual liability to the original plaintiff." (Emphasis added.)

To the extent that it applies to this case, we approve this language. Since Joy failed to approve the settlement or take the opportunity to defend against the original claim, all that was required of Iowa was that it demonstrate potential liability, i.e., exposure to liability under the

7

facts of its case and the law of this state. The jury was so instructed. There is evidence in the record to support potential liability.

Iowa proved that the settlement was reasonable. Ronald Dunmire testified that Gilman's complaint asked for approximately $88,000 in damages. Therefore, Dunmire felt a settlement of $50,000 was realistic. Joy failed to rebut Dunmire's testimony as to the reasonableness of the settlement. The evidence given supports the verdict.

Joy next contends that Iowa Company's Standard Air Pollution Control Performance Warranty should have been admitted into evidence because it contained language which limited the operation of any warranty given to Gilman to the "initial operating period." Joy argues that the standard warranty is relevant because 1) it shows that Iowa's warranty was limited to the initial operating period of the plant, and 2) it places the credibility of Ronald Dunmire at issue.

Ronald Dunmire testified that the standard warranty was not given because the invoice received from Gilman asked for a specific guarantee that the pollution equipment met certain Montana standards. Without foundation that the standard warranty was given, the text of the warranty is not relevant.

It is true that Dunmire's testimony is contrary to the position taken by Iowa in interrogatory No. 34 and supplemental interrogatory No. 9, wherein Iowa stated that the specific warranty was "subject to certain limitations such as contained in Iowa Manufacturings' Standard Air Pollution Control Performance Warranty." Joy, however, did not use these interrogatories to impeach Dunmire's testimony. While the interrogatories may have had impeachment value the text of the warranty alone would not.

Appellant, Joy, argues that the District Court erred in granting Iowa's motion in limine, because the existence of a release or running of the statute of limitations, as between Iowa and Gilman, were relevant to demonstrate that Iowa was not actually liable to Gilman in the underlying cause of action.

The evidence all indicates that the release executed by Gilman to Iowa in January of 1973 was for settlement of a claim for late delivery of the equipment and had nothing to do with the air pollution problems involved in Gilman's later suit against Iowa. The trial court correctly granted the motion in limine on the release question. The motion was granted on the statute of limitations question only to prohibit evidence proving the date of delivery as representing the starting time. The trial court correctly ruled that date of discovery governed running of the statute and left the question of when discovery was or should have been, open to proof. Appellant did not seek to show that the statute had run since discovery, nor did appellant offer any instruction covering the subject.

Finally, Joy contends that the jury should have been instructed on active and passive fault because Iowa's conduct proximately caused injury to Gilman. Where a warrantee is supplied defective goods which constitutes a breach of warranty on the part of the supplier, but the warrantee's subsequent conduct proximately causes the injury to the third party, then the warrantee is not merely passively at fault and loses his right to indemnity. Town Pump, Inc. v. Diteman (1981), _____ Mont. _____, 622 P.2d 212, 38 St.Rep. 54.

Were there evidence that Iowa was more than passively at fault because its conduct was a proximate cause of the injury

9

to Gilman, Joy's instruction would be proper. However, in this case, no evidence was presented to show that Iowa was actively responsible for the defects in the pollution control equipment. Although there was evidence that Iowa made adjustments to the equipment in 1975, no evidence was presented to show that this was a proximate cause of the pollution control problem. Therefore, a jury instruction on active/passive negligence would not have been proper.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____
Justices

Mr. Chief Justice Haswell, specially concurring:

I concur with the foregoing opinion on all issues excepting the issue concerning the statute of limitations. I concur in the result of that issue but not in its rationale.

My quarrel is with the application of the four-year statute of limitations on sales in the Uniform Commercial Code, section 30-2-725, MCA. In my view the applicable statute of limitations is the five-year statute of limitations on implied contracts.

This case is an action for indemnity based on breach of an express written warranty. An action for common-law indemnity is based on a theory of implied contract or quasi contract, and thus is very generally held to be governed by the statute of limitations applicable to actions on implied contracts. Annot., Limitation Applicable to Indemnity Action, 57 ALR3d 833, 838, and copious case authority cited therein from numerous jurisdictions. An action on an implied contract of indemnity is wholly independent as a cause of action from the transaction or situation which gives rise to the right of indemnity. Annot., Limitation Applicable to Indemnity Action, supra, at 839-840; Rieger et al. v. Frankstram Realties, Inc. (1946), 57 A.D. 411, 68 N.Y.S.2d 243.

This distinction is illustrated and explained in a federal case similar to the one involved here. Stephenson v. Duriron (D.C. Ohio 1968), 292 F.Supp. 66, aff'd., (6th Cir. 1970), 428 F.2d 387, cert. denied, 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 247. In that case plaintiffs were injured and their property was damaged due to gas seepage and a resulting explosion caused by a fracture in a metal valve in the gas distribution system of a utility. The defective

11

valve had been purchased by the utility from a supplier who warranted the valve to conform to certain specifications based on the same warranty given to it by the manufacturer of the valve. The supplier assigned its right of indemnification against the manufacturer to the plaintiffs. In an action in an Alaska state court, plaintiffs recovered judgment against the supplier who was held to be only secondarily liable with primary liability on the manufacturer. Plaintiffs then brought an action in federal court in Ohio to enforce the Alaska judgment against the supplier and also sought judgment against the manufacturer as assignee of the supplier's right of indemnity against the manufacturer. The federal court applied the Ohio statute of limitations on oral contracts to the indemnity action rejecting the contention of the manufacturer that the action was barred by the statute of limitations governing actions for personal injuries and property damage. The court reasoned that plaintiffs were not seeking recovery for their personal injuries and property damage against the manufacturer, but on the contrary were seeking to enforce the implied contract for indemnification in favor of the supplier against the manufacturer that plaintiffs held by virtue of the assignment.

The rationale of the majority in the instant case is bottomed on the proposition that the warranty given by Joy to Iowa is limited in time and that to hold otherwise would allow Iowa to destroy the protection afforded to Joy by the statute of limitations applicable to warranties. This contention is specious under the facts of this case. The warrantor can protect itself by inserting a time limitation in the warranty. But where, as here, the warrantor gives an

12

express written warranty without a time limitation, the warrantor is bound by it. The express written warranty given by Joy to Iowa is set forth verbatim as follows:

> "Western Precipitation Division of Joy Manufacturing Company guarantees not to exceed the outlet dust loading when the equipment is operated in accordance with the design conditions as specified below:
>
> "I.   SOURCE OF DUST ----------Rock Dryer
>
> "II.   TYPE OF PRECLEANER ------9VGR
> Multiclone
>
> "III.   SCRUBBER INLET CONDITIONS
>
> "A.   Estimated Dust Loading - gr/acf
> ------------------- 6 to 10
>
> "B.   Volume - acfm -------------- 40,000
>
> "C.   Temp. °F.------------------- 300
>
> "D.   Moisture Content % by Wt.--- 27.2
>
> "IV. WATER RATE - GPM ----------- 53 to 76
>
> "V.   SCRUBBER PRESSURE DROP - "VWC@ Oper.
> Cond. ---------- 6
>
> "VI. SCRUBBER OUTLET CONDITIONS
>
> "A.   Volume - acfm -------------- 35,200
>
> "B.   Temp. - °F ---------------- 170
>
> "C. Moisture Content - Saturated
>
> "D.   Dust Loading      0.25 gr/scf dry"

The right of indemnity accrued here when payment was made by Iowa to the Gilman Excavating Company under the terms of the compromise settlement. St. Paul Fire & Marine Insurance Co. v. Thompson (1969), 152 Mont. 396, 451 P.2d 98. Approximately one week prior to trial, Iowa settled the underlying Gilman action for $50,000 and the trial proceeded on the third party complaint for indemnity by Iowa against Joy. The statute of limitations for an implied or quasi

13

contract in Montana is five years. Section 27-2-202(2), MCA. Accordingly, Iowa's action for indemnity is not barred.

The result is the same in this case whether this Court applies the four-year statute of limitation on sales under the Uniform Commercial Code or the five-year statute on implied contracts of indemnity. However, considerable mischief can result in future cases from the holding of the majority. Since the right of indemnity does not accrue until payment is made or judgment secured in the underlying action, that right may be rendered meaningless and illusory to the indemnitee in some situations. For example, the statute of limitations in the underlying action may well have run before the right of indemnity accrues to the indemnitee. If the statute of limitations in the underlying action is applied to the indemnity action, the indemnitee's remedy may be barred before his claim for relief accrues unless he has filed a permissive but not mandatory third party complaint prior to accrual of his substantive right of indemnity. St. Paul Fire & Marine Insurance Co. v. Thompson, supra, where the indemnity action was not filed until approximately one year after final judgment in the underlying action was entered, is an example of a situation where the right of indemnity would be barred if the statute of limitations in the underlying action were applied. Hence, this special concurring opinion.

_____
Chief Justice

I concur in the foregoing opinion of Mr. Chief Justice Haswell.

_____
Justice