**WESTERN RECREATIONAL VEHICLES, INC., a Washington corporation, Plaintiff–Appellee,**

v.

**SWIFT ADHESIVES, INC., A DIVISION OF REICHHOLD CHEMICALS, INC., a Delaware corporation, Defendant–Appellant.**

**WESTERN RECREATIONAL VEHICLES, INC., a Washington corporation, Plaintiff–Appellant,**

v.

**SWIFT ADHESIVES, INC., A DIVISION OF REICHHOLD CHEMICALS, INC., a Delaware corporation, Defendant–Appellee.**

Nos. 92–36879, 92–36899.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 1994.

Decided May 11, 1994.

James M. Danielson and Stanley A. Bastian, Jeffers, Danielson, Sonn & Aylward, Wenatchee, WA, for defendant-appellant-cross-appellee.

James S. Berg, Halverson & Appelgate, Yakima, WA, for plaintiff-appellee-cross-appellant.

Before: HUG, HALL, and THOMPSON, Circuit Judges.

Opinion by Judge Hall.

CYNTHIA HOLCOMB HALL, Circuit Judge:

In this diversity action for breach of warranty, defendant Swift Adhesives, Inc. appeals the district court's judgment and plaintiff Western Recreational Vehicles, Inc. cross-appeals the district court's damage award. We conclude the district court erred by not applying the relevant statute of limitations and by not requiring Swift to demonstrate how much, if any, of Western's lost-profit damages to allocate to the limitations period. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## I.

Western Recreational Vehicles, Inc. manufactures travel trailers, truck campers, and fifth-wheel trailers ("RVs"), the production of which requires bonding exterior sidewalls to interior RV components. In 1979, Western began to use a roll-coater lamination process, through which it could bond sidewalls with adhesive instead of staples. At that time, Western asked Swift Adhesives, Inc. to recommend a glue for the lamination process.

After testing various products with the roll-coater machinery and aluminum sidewalls, Swift advised Western to use Adhesive # 47344 ("Adhesive"). Western agreed and soon became a regular customer, using Adhesive on thousands of RVs over the next eight years. Ultimately, the product worked quite well, producing a minuscule .5% rate of exterior skin delamination on aluminum-sided vehicles.

In 1984, Western decided to produce RVs with reinforced fiberglass ("Filon") instead of aluminum sidewalls. Western asked Swift to recommend a glue that would be compatible with the new material and, after conducting tests on Filon samples, Swift advised the RV manufacturer that Adhesive would work satisfactorily on the fiberglass. Relying on this advice, Western commenced production of Filon-sided RVs laminated with Adhesive.

Within a year-and-a-half, Western began to receive customer complaints regarding delamination of Filon siding. Upon inspection of the damaged RVs, Western discovered that the glue line was discolored and had lost tack, particularly in panels exposed to natural elements. From this inspection, Western concluded that Adhesive had caused the delamination problems.[1]

As a result, Western filed suit in state court against Swift for breach of express and implied warranties. Swift removed the action to federal court, defending primarily on the grounds that the statute of limitations had run and that the sales invoices and product data sheets disclaimed all warranties. After a bench trial, the district court found that, because fiberglass contracted and expanded more than aluminum, Adhesive did not bond properly with Filon and proximately caused the delamination problems. The court further determined that Swift had assured Western that "You can go ahead and use [Adhesive] just like you have on the aluminum" and concluded that Western was protected by an express warranty that ex-

tended to future performance, thereby tolling the statute of limitations. Finally, the court held Swift's disclaimers invalid and awarded Western more than $3 million in damages.

Swift filed a timely appeal, arguing that the statute of limitations bars Western's claims, that the disclaimers are valid, that the district court erred by admitting certain evidence at trial, and that the alleged breach of warranty did not proximately cause Western's damages. Western cross-appealed, contending that if the statute of limitations does apply, the district court erred by not requiring Swift to demonstrate how much, if any, of the lost-profit damages are attributable to the limitations period.

## II.

■ We first address the related statute of limitations and damages issues. The transactions between Swift and Western constituted a sale of goods sufficient to trigger application of Washington's version of the Uniform Commercial Code. See Wash.Rev. Code Ann. §§ 62A.2–103, 2–105.[2] As a result, UCC § 2–725's four-year statute of limitations applies to Western's action:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued....

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery must await the time of such performance the cause of action accrues when the breach is or should have been discovered.*

*Id.* § 2–725 (emphasis added). Western discovered the Filon problems in 1987 and filed suit against Swift on January 17, 1990. As a result, § 2–725 bars all claims arising from

---

1. Eventually, Western had to dedicate a repair department, with as many as ten technicians, exclusively for repairing (free of charge) the delamination problems. In total, Western has had, or will have, to repair more than twenty percent of the Filon-sided RVs that it laminated with Adhesive.

2. Because Washington has adopted without change the UCC provisions relevant to this appeal, all further references to the statute will be to the "UCC."

Adhesive delivered prior to January 17, 1986 unless Swift made a warranty of future performance within the meaning of the statute, in which case all of Western's claims survive.

The district court held that Swift had in fact warranted the future performance of Adhesive. In so holding, the court refused to apply the majority rule requiring future performance warranties to refer *explicitly* to specific temporal periods:

> This Court doesn't read or feel the need to read "explicit" to require a temporal fix of months or years. The word means to the Court the clear and unequivocal understanding by the parties—and it seems to the Court that all of the attendant circumstances which are repleat [sic] in the record and which this Court has alluded to on a number of occasions—are such that without a word being said, just a silent thumbs up from Swift—would have been sufficient—sufficiently clear and unequivocal to advise [Western] that [it] should go ahead and use this in the future and that it would be all right for future use....
>
> This Court doesn't see certainty as a goal more important in the law than justice. To substitute in this, or any other contract, a requirement of a certain period of months in place of the natural and normal meaning of an explicit reference does, in the view of this Court—and would in this case—foster injustice.

The court also held that, alternatively, Swift had in fact referred to a specific time period by promising that Adhesive would work as well on Filon as on aluminum siding: "The aluminum had been bonded by this glue for five years. It had provided absolutely satisfactory suitability for a period of five years. So if a warranty of explicit reference to the future requires a fix in time, it seems to this Court that [Western] was given it."

**A.**

■ Swift does not challenge the district court's factual finding that it expressly warranted Adhesive to work as well on Filon as on aluminum. Instead, Swift contends the court erred by concluding that the warranty "explicitly extends to future performance" within the meaning of § 2–725. The issue

we must resolve is, therefore, a mixed question of fact and law. *See United States v. McConney,* 728 F.2d 1195, 1200 (9th Cir.) (en banc) (mixed questions are those "in which the historical facts are ... established, the rule of law is undisputed, and the issue is whether the facts satisfy the relevant statutory ... standard") (internal quotation omitted), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Because resolution of this issue will require us "to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles," we review *de novo* the district court's determination. *Id.* at 1202.

Washington courts have not yet considered the scope of § 2–725's "future performance" exception. We therefore must predict how the Washington Supreme Court would decide the issue. *E.g., General Motors Corp. v. Doupnik,* 1 F.3d 862, 865 (9th Cir.1993). The overwhelming majority of out-of-state cases, which provide the best guidance for making such a prediction, interpret the exception very narrowly:

> Most courts have been very harsh in determining whether a warranty explicitly extends to future performance. Emphasizing the word "explicitly," they have ruled that there must be specific reference to a future time in the warranty. As a result of this harsh construction, most express warranties cannot meet the test and no implied warranties can since, by their very nature, they never "explicitly extend to future performance."

*Standard Alliance Indus. v. Black Clawson Co.,* 587 F.2d 813, 820 (6th Cir.1978), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979). Under this majority rule, therefore, courts construe "the term 'explicit' [to mean] that the warranty of future performance must be unambiguous, clearly stated, or distinctly set forth." *R.W. Murray Co. v. Shatterproof Glass Corp.,* 697 F.2d 818, 822 (8th Cir.1983). *See South Burlington Sch. Dist. v. Calcagni–Frazier–Zajchowski Architects, Inc.,* 138 Vt. 33, 410 A.2d 1359, 1366 (1980) ("[S]ince all warranties in a sense extend to the future performance of goods, courts will not lightly infer from the language of express warranties

terms of prospective operation that are not clearly stated."); 1 James White & Robert Summers, *Uniform Commercial Code* § 11–9 (3d ed. 1988) ("[I]t should be clear that this extension of the normal warranty period does not occur in the usual case, even though all warranties in a sense apply to the future performance of goods.").[3]

The rationale underlying the rule is fulfillment of statutory purpose. Section 2–725 "serve[s] the important function of providing a point of finality for businesses after which they c[an] destroy their business records without the fear of a subsequent breach of contract for sale or breach of warranty suit arising to haunt them." *Ontario Hydro v. Zallea Sys.*, 569 F.Supp. 1261, 1266 (D.Del. 1983).

> The difficulty of determining conformity with a warranty at the time of delivery is a problem common to many situations involving warranties by description. Such difficulties have not been regarded as controlling, however, in the absence of contract language *explicitly* warranting future performance. The drafters of the UCC decided that the seller's need to have some clearly defined limit on the period of its potential liability outweighed the buyer's interest in an extended warranty and reserved the benefits of an extended warranty to those who *explicitly* bargained for them.

*H. Sand & Co. v. Airtemp Corp.*, 738 F.Supp. 760, 770 (S.D.N.Y.1990) (internal quotation omitted). *See Stumler*, 644 F.2d at 672 ("The requirement of explicitness insures that the parties to the contract have knowingly agreed to alter the usual statute of limitations . . . .").

It is clear that a buyer and a seller can freely negotiate to extend liability into the future; that is why specific allowance was made for warranties "explicitly" extending to future performance. In the absence of specific agreement, however, UCC § 725(2), reflecting the drafters' intention to establish a reasonable period of time, four years, beyond which business persons need not worry about stale warranty claims[,] is applicable. This policy consideration underlying § 2–725 makes it acceptable to bar implied warranty claims brought more than a specified number of years after the sale; otherwise merchants could be forever liable for breach of warranty on any goods which they sold. Similarly, an express warranty which makes no reference at all to any future date should not be allowed to extend past the limitations period.

*Standard Alliance*, 587 F.2d at 820 (citations omitted).

Applying the majority rule to cases with facts analogous to this case, several courts have declined to find a warranty of future performance. The Third Circuit, for example, found no future performance warranty in sales literature boasting that, "[o]n the record, [the seller] can cite many asbestos roofs that, today, are still performing satisfactorily after more than forty (40) years of exposure to heat, cold, water, air and even fire." *Jones & Laughlin*, 626 F.2d at 291. According to the court, such representations did not satisfy § 2–725's rigorous inquiry:

> The statements . . . may not reasonably be relied on by [the buyer] as *explicit* extensions of any warranty to cover the future

---

**3.** For decisions applying the majority rule, see *Rosen v. Spanierman*, 894 F.2d 28, 31–33 (2d Cir.1990) (New York law); *Wilson v. Hammer Holdings, Inc.*, 850 F.2d 3, 4–7 (1st Cir.1988) (Massachusetts law); *Economy Housing Co. v. Continental Forest Prods.*, 805 F.2d 319, 320–21 (8th Cir.1986) (Nebraska law); *R.W. Murray Co.*, 697 F.2d at 821–23 (Missouri law); *Stumler v. Ferry–Morse Seed Co.*, 644 F.2d 667, 668–69 (7th Cir.1981) (Indiana law); *Clark v. DeLaval Separator Corp.*, 639 F.2d 1320, 1324–25 (5th Cir. 1981) (Texas law); *Jones & Laughlin Steel Corp. v. Johns–Manville Sales Corp.*, 626 F.2d 280, 290–92 (3d Cir.1980) (Illinois law); *Standard Alliance*, 587 F.2d at 818–21 (Ohio law); *In re Lone Star Industries, Inc.*, 776 F.Supp. 206, 219–20 (D.Md.1991) (Maryland law); *Crouch v. General Elec. Co.*, 699 F.Supp. 585, 592–95 (S.D.Miss. 1988) (Mississippi law); *Sellon v. General Motors Corp.*, 571 F.Supp. 1094, 1097–99 (D.Del.1983) (Delaware law); *Wright v. Cutler–Hammer, Inc.*, 358 So.2d 444, 445–46 (Ala.1978); *City of Carlisle v. Fetzer*, 381 N.W.2d 627, 629 (Iowa 1986); *Voth v. Chrysler Motors Corp.*, 218 Kan. 644, 545 P.2d 371, 375–78 (1976); *Centennial Ins. Co. v. General Elec. Corp.*, 74 Mich.App. 169, 253 N.W.2d 696, 697 (1977); *Poppenheimer v. Bluff City Motor Homes*, 658 S.W.2d 106, 109–12 (Tenn.Ct.App.1983); *South Burlington Sch. Dist.*, 410 A.2d at 1366 (Vt.1980).

performance of the product, as is required by § 2–725(2). Nor does knowledge by [the seller] of [the buyer]'s expectations, or the possible reliance by [the buyer] on [the seller]'s expertise, transform these representations regarding the performance of existing products, advanced in advertising brochures, into explicit warranties of future performance.

*Id.*

Similarly, in a case particularly on point, the Vermont Supreme Court refused to apply the future performance exception to a warranty promising that the "product 'would last as long as the built-up roofing would last,' that it 'would do as good a job as the roofing material originally specified with the built-up roof of twenty years,' that it performed satisfactorily in other situations, and that it was suitable for Vermont climatic conditions." *South Burlington,* 410 A.2d at 1366. The court held this warranty insufficiently explicit to trigger the exception:

> To the extent that these representations spoke to the future, it cannot be said that they constitute the *explicit* warranty of future performance.... [W]here, as here, the words alleged to extend a warranty to future performance are so unclearly stated and are so set forth that there is doubt as to their meaning[,] a court should not infer that more than a warranty of present characteristics, design or condition was intended.... [T]he fact that [the buyer] expected a durable and adequate roof, or that it relied on [the seller]'s expertise, [is not]

sufficient to raise these representations of present characteristics to explicit warranties of future performance.

*Id.*[4]

Rather than follow the majority rule, the district court relied on *Mittasch v. Seal Lock Burial Vault,* 42 A.D.2d 573, 344 N.Y.S.2d 101 (1973), and *Iowa Mfg. Co. v. Joy Mfg. Co.,* 206 Mont. 26, 669 P.2d 1057 (1983). In *Mittasch,* a New York appellate court held, without analysis, that a promise that a burial vault "will give satisfactory service at all times" constituted an explicit warranty of future performance. *Mittasch,* 42 A.D.2d 573, 344 N.Y.S.2d at 102. In *Iowa Manufacturing,* the Montana Supreme Court concluded, without analysis, that an assurance that an asphalt mixing plant "would meet the state of Montana Air Pollution Standards" satisfied the § 2–725 exception. *Iowa Mfg.,* 669 P.2d at 1059.[5]

The district court relied on these cases, which loosely interpreted § 2–725's "explicitly extends" requirement, because it felt that the majority rule "perpetuates a fraud." This reliance was misplaced. There is no reason to believe that Washington courts would abandon the overwhelming majority rule to prevent a purported "fraud" which is, in reality, the commonplace running of a statute of limitations. "Any harshness [that results from the statute] is directly attributable to the restrictive language of the code which leaves courts with no alternative but to render a narrow decision." *Poppenheimer,*

---

**4.** Other courts applying the majority rule have reached the same conclusion when construing similarly nebulous warranties. *See Economy Housing,* 805 F.2d at 320 (assurances that "the plywood is intended for 'permanent' exterior exposure"); *Tolen v. A.H. Robins Co.,* 570 F.Supp. 1146, 1153 (N.D.Ind.1983) (brochure with the following dialogue: "How long can I expect protection from the Shield? For a period of several years. Some women have been effectively protected by the same I.U.D. for five years or longer."); *Ridle v. Sprayrite Mfg. Co.,* 198 Ill.App.3d 597, 144 Ill.Dec. 753, 555 N.E.2d 1272, 1274 (1990) (promises that "the sprayer with the rebuilt engine would be adequate for [the buyer]'s needs").

**5.** Although not cited by the district court, several other courts have also applied § 2–725 loosely. *See Balog v. Center Art Gallery–Hawaii, Inc.,* 745

F.Supp. 1556, 1570 (D.Haw.1990) (representation that a painting is "authentic" is an explicit warranty of future performance) (expressly disagreeing with the First Circuit's *Wilson* decision and the Second Circuit's *Rosen* decision); *Moore v. Puget Sound Plywood, Inc.,* 214 Neb. 14, 332 N.W.2d 212, 214–15 (1983) ("the description of the goods as 'siding' carried with it the representation that it would last the lifetime of the house"); *Cucchi v. Rollins Protective Services,* 524 Pa. 514, 574 A.2d 565, 573 (1990) (plurality) (future performance exception extends to warranties "implied by content and circumstances sufficiently specific as to unequivocally refer to future performance").

These decisions "stretch the concept of explicitness to its limits, and beyond." William Henning & George Wallach, *The Law of Sales Under the Uniform Commercial Code* ¶ 11.12 (1992).

658 S.W.2d at 111. Presumably, Washington courts would, like most others, be "reluctant ... to waive the specific eligibility requirements established by the legislature [in § 2-725] for what, it must be remembered, is an *exception* to the general limitations rule.... [I]f there is to be an exception to the ... exception, it should be up to ... lawmakers to design it." *Wilson,* 850 F.2d at 5–6.

■ Particularly in this case, where the only representations were Swift's oral statements that Adhesive would work as well on Filon as on aluminum, "[t]o find that th[e] warranty was covered by § [ ]2–725(2) would require an entirely strained and unrealistic interpretation of the phrase 'future performance of the goods.' Moreover, such a result would also require that we completely ignore the code drafter's command that the warranty be explicit." *Poppenheimer,* 658 S.W.2d at 111. We therefore hold that Swift did not make an explicit warranty of future performance within the meaning of § 2-725(2) and that, as a result, Western may not recover damages resulting from Adhesive delivered prior to January 17, 1986.

### B.

■ In light of our conclusion that the limitations period of § 2–725 applies to this case, we next consider Western's cross-appeal from the district court's refusal to segregate lost-profit damages resulting from Adhesive delivered prior to January 17, 1986 from lost-profit damages resulting from Adhesive delivered on or after that date. The court only briefly considered this issue:

> Now, bearing in mind that the segregation of these amounts must turn upon the Court's decision involving the statute of limitations, the Court should say with regard to this item—these items of lost profits—that the Court's unable to segregate them. So if the statute of limitations applies to them, as [Swift] contends it should, this Court would be of the view that [Western]'s recovery in this area fails entirely. If [Western] feels that the record sustains

a segregation of them, the Court will certainly hear from [Western] on a post-trial motion on that point.

We reverse this determination because the district court (and the parties) apparently were under the misconception that *Western* bore the burden of proving segregation of damages. This is incorrect as a matter of Washington law:

> The statute of limitations is an affirmative defense and its elements must be proved by the party asserting it. *Where a part of plaintiff's claim for damages is barred by the statute of limitations and a part of it is not, the defendant pleading the statute as an affirmative defense has the burden of specifically proving which portion of plaintiff's damages are barred by the statute. Failure to so prove will result in a complete failure of the affirmative defense....* The obligation to segregate the damage should fall upon the wrongdoer and not upon the person he has harmed.

*Henderson v. Pennwalt Corp.,* 41 Wash.App. 547, 704 P.2d 1256, 1262 (1985) (emphasis added) (internal citations and quotations omitted). *Accord, e.g., Fulle v. Boulevard Excavating, Inc.,* 20 Wash.App. 741, 582 P.2d 566, 568–69 (1978).

Thus, the district court erred by holding that Western would recover nothing because it had not proven with certainty the segregation of damages. In fact, the opposite is true. If Swift is unable to show which part of Western's damages are attributable to Adhesive delivered prior to January 17, 1986, then Western should recover all of its proven lost-profit damages. We remand for findings on the segregation issue consistent with this burden of proof.

### III.

■ We next consider the standard warranty disclaimers that Swift included on sales invoices and product data sheets sent to Western.[6] The district court held these disclaimers invalid for lack of notice:

> his intended use, and purchaser assumes all risk and liability for consequential or incidental damages. ALL PRODUCTS ARE SOLD WITHOUT WARRANTIES OF ANY KIND, EX-

---

**6.** The sales invoices bore the following disclaimer in small print:

> NON–WARRANTY. Before using, purchaser shall determine the suitability of a product for

[T]o suggest that having acted as the defendant did, with all that followed, he should be able to avoid these consequences [of having made a warranty] by saying, "Hey, back here there was a disclaimer," or "When you got the stuff for your next shipment, there was this disclaimer language," is not acceptable. [The disclaimer] wasn't conspicuous in [the parties'] dealings, in the manifestations of their mind.

To the Court, which is entitled to look at the totality of the circumstances, that is totally unfair. It would be a total surprise—it would be, again, a failure of justice, to permit that to be raised as a shield at this time.

We review *de novo* the district court's determination, *see Sierra Diesel Injection Serv. v. Burroughs Corp.*, 890 F.2d 108, 113–14 (9th Cir.1989) (validity of warranty exclusion is a question of law), and we agree that Swift's disclaimers are invalid.

▮ Under the UCC, sellers may disclaim express and implied warranties in limited circumstances. *See* UCC § 2–316. In Washington, however, "[d]isclaimers of warranty are not favored in the law.... [A] disclaimer or waiver of warranty is ineffective unless (1) it is explicitly negotiated between the buyer and the seller, and (2) it sets forth with particularity the qualities and characteristics that are not being warranted." *Miller v. Badgley*, 51 Wash.App. 285, 753 P.2d 530, 535 (1988) (internal quotation omitted). *See, e.g., Berg v. Stromme*, 79 Wash.2d 184, 484 P.2d 380, 386 (1971) (pre-UCC); *Thomas v. Ruddell Lease–Sales, Inc.*, 43 Wash.App. 208, 716 P.2d 911, 914 (1986); *Rottinghaus v. Howell*, 35 Wash.App. 99, 666 P.2d 899, 903 (1983); *Hartwig Farms, Inc. v. Pacific Gamble Robinson Co.*, 28 Wash.App. 539, 625 P.2d 171, 173 (1981). Thus, "[a] disclaimer made after a sale is completed cannot be effective because it was not a part of the bargain between the parties." *Rottinghaus*, 666 P.2d at 903. *E.g., Hartwig Farms*, 625 P.2d at 173. Western and Swift never discussed, much less negotiated, the disclaimers. Moreover, Swift added most of the disclaimers after the sale, on invoices delivered with Adhesive shipments. The disclaimers are, as a result, invalid under the Washington "negotiation" rule.[7]

Relying on *American Nursery Products v. Indian Wells Orchards*, 115 Wash.2d 217, 797 P.2d 477 (1990), however, Swift argues that the Washington rule applies only to *consumer* sales. In *American Nursery*, the Washington Supreme Court did hold that clauses in commercial sales agreements purporting to limit contract *remedies* need not be explicitly negotiated. *Id.* at 481–82. We find *American Nursery* distinguishable from the case at bar, however, and we believe that Washington courts would not apply it to this case for several reasons.

First, *American Nursery* involved remedy limitations, an area of contract law sufficiently distinct from warranty disclaimers that the UCC has an entirely different statutory pro-

---

PRESS OF IMPLIED, AS TO THEIR MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. No statement or recommendation shall have any force or effect unless in an agreement signed by officers of sellers and manufacturer.

Similarly, the product data sheets bore the following disclaimer in small print:

NON–WARRANTY—The facts stated above and the recommendations made with respect to use of any product are based on our own experiences and/or the experiences of others, and are believed to be reliable. No guarantee of their accuracy is made. Before using, purchaser shall determine the suitability of a product for his intended use, and purchaser assumes all risk and liability for consequential or incidental damages. ALL PRODUCTS ARE SOLD WITHOUT WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, AS TO THEIR MER-

CHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. No statement or recommendation shall have any force or effect unless in an agreement signed by officers of sellers and manufacturer.

7. Moreover, to the extent the disclaimers contradict Swift's express warranty to Western that Adhesive would work as well on Filon as on aluminum, UCC § 2–316(1) provides an additional basis for invalidating them. *See* UCC § 2–316(1) ("Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit [that] warranty shall be construed wherever reasonable as consistent with each other; but ... negation or limitation is inoperative to the extent that such construction is unreasonable."); *Travis v. Washington Horse Breeders Ass'n*, 111 Wash.2d 396, 759 P.2d 418, 422 (1988).

vision, § 2–719, to regulate it. Section 2–719 differs significantly from § 2–316, the warranty disclaimer provision, because it gives buyers the right to exercise the UCC's full panoply of remedies in the event that a contract containing limited or exclusive remedies "fail[s] of its essential purpose." UCC § 2–719(2). Section 2–316, of course, has no similar protective provision.

And, second, even if Washington courts were generally to extend *American Nursery* to warranty disclaimers, the validity of Swift's disclaimers would still be questionable. In *American Nursery*, the court stressed its overriding concern "to prevent the utilization of 'unfair surprise' to the detriment of the parties." *American Nursery*, 797 P.2d at 481 (internal quotation omitted). Thus, the court validated a remedy limitation where the parties had negotiated the contract as a whole, the exclusionary clause was clearly labeled and conspicuous, and the aggrieved party had possession of the contract for over a month before signing it. *Id.* at 482. In contrast, Western and Swift never discussed the disclaimers and never negotiated their contract.

We think it highly unlikely that Washington courts would enforce Swift's disclaimers under such circumstances and we therefore agree with the district court that the disclaimers are invalid as a matter of Washington law.

## IV.

We finally address Swift's appeal of the district court's determination that Adhesive caused Western's delamination problems. Swift's argument takes two forms. First, Swift attacks the admission of certain evidence that contributed to the court's factual finding. And, second, Swift disputes the court's conclusion that the breach of warranty was a proximate cause of the delamination damage. We find no merit in either contention.

## A.

█ At trial, the district court permitted Western to introduce evidence that NuWa

Industries, a Kansas-based RV manufacturer, used Adhesive on Filon siding and suffered similar delamination problems. Swift argues that the court should have excluded the NuWa evidence pursuant to Federal Rules of Evidence 401 and 403 and that, because it did not do so, a new trial is necessary. We conclude that the district court did not abuse its discretion by admitting the evidence. *See, e.g., Larez v. City of Los Angeles*, 946 F.2d 630, 641 (9th Cir.1991) (reviewing district court's Rule 403 determinations for abuse of discretion).

The general rule in federal courts is that "[a] showing of *substantial similarity* is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of . . . a design defect." *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir.1991) (emphasis added). As the district court noted, in this case "the parallels [between the two incidents] are startling." Western aptly describes the similarities:

> Western RV used Black Brothers application equipment to apply Adhesive. So did NuWa [in fact, NuWa used the exact same equipment, purchased from Western]. Western RV applied Adhesive 47344, manufactured by Swift, to bond substrates of the sidewall panels together. So did NuWa. Specifically, Western RV bonded together Filon and fome-cor with Adhesive. So did NuWa. Western RV applied Adhesive to the substrates under the constant guidance and with the constant assistance of Swift's on-site representatives. So did NuWa. And, ultimately, Western RV experienced severe delamination problems, with Adhesive failing to hold its bond with the Filon. And, ultimately, so did NuWa.

Although there were minor dissimilarities between Western's and NuWa's experience, the district court certainly did not abuse its discretion by admitting the evidence. *See, e.g., 29 Am.Jur.2d Evidence* § 299 (1967) (evidence admissible despite "some dissimilarity of condition with respect to a matter which cannot reasonably be expected to have affected the result").[8]

---

**8.** Even if admission of the NuWa evidence was    somehow an abuse of discretion, it did not preju-

## B.

■ Swift next contends the district court erred by finding that its breach of warranty was a proximate cause of Western's damages and that Washington's comparative fault statute was inapplicable. We conclude the district court's determinations of proximate cause and fault are not clearly erroneous. *See, e.g., Seattle Flight Serv. v. City of Auburn,* 24 Wash.App. 749, 604 P.2d 975, 978 (1979) ("Unless the evidence is undisputed and the inferences are plain and not subject to reasonable doubt, the question of proximate cause is for the trier of fact.").

Swift first argues that causation does not exist because it never "made any warranties, express or implied, regarding the elasticity of Filon or the long term performance characteristics of the adhesive when used with Filon." As Western notes, even if true this contention is irrelevant:

> The court found that Swift warranted, both expressly and impliedly, that Adhesive would properly perform and maintain a bond with Filon as it had with aluminum. This warranty was not limited in any way, such as, for instance, "The glue may not work if the Filon expands a lot." Swift, for its own reasons, and after conducting the tests it apparently felt were appropriate, and in response to specific inquiries from Western RV, made an unqualified, blanket warranty that Adhesive would maintain its bond with the Filon.

The court's finding of causation was correct.

■ Swift next argues that, even if the breach of warranty proximately caused Western's damages, the court should have reduced Western's recovery pursuant to Washington's comparative fault statute, *see* Wash.Rev.Code Ann. §§ 4.22.005, 4.22.015, because the RV manufacturer was at fault for not conducting its own tests on Adhesive and Filon. In essence Swift contends that, because Western's aluminum supplier had mentioned that Filon suffered elasticity problems, Western had the duty to conduct its own tests of Adhesive. The district court disagreed:

> [A] defendant who holds himself out as having the knowledge and the facilities to test the samples he supplied, who undertook to do that without any reservations or any limitations about the ability to do that—about the nature of the tests, the need for more material or more information about it, shouldn't be permitted [Swift's] position.

We agree. *See Butcher v. Garrett-Enumclaw Co.,* 20 Wash.App. 361, 581 P.2d 1352, 1360 (1978) (reliance on warranty was reasonable despite the fact that the buyer was an expert in the type of machine he bought). The district court properly refused to reduce Western's recovery through the comparative fault statute.

## V.

The district court erred by not following the "majority rule" and by refusing to apply § 2–725's four-year statute of limitations to Western's claims. Because Swift did not make an explicit warranty of future performance, § 2–725 applies to bar Western's claims for damages arising from Adhesive delivered prior to January 17, 1986. The court also erred by not requiring Swift to establish how much of Western's lost-profit damages are attributable to the time-barred period. Because the burden of proving segregation properly lay on Swift, we remand in order for the court to determine the allocation of damages consistent with this burden. We affirm in all other regards.

**AFFIRMED in part; REVERSED in part; REMANDED for proceedings consistent with this opinion.**

dice Swift. The case was a bench trial and the court was aware that dissimilarities between Western and NuWa would tend to negate the probative value of the evidence. Moreover, an abundance of other evidence established that Adhesive caused the delamination problems.