### South Burlington School District v. Calcagni-Frazier-Zajchowski Architects, Inc., Kenclif Construction, Inc., A. C. Hathorne Co., Inc., and W. R. Grace & Company v. Martin Fireproofing Corp.

[410 A.2d 1359]

No. 110-79

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed January 16, 1980

*Gravel, Shea & Wright, Ltd.* (*Robert B. Hemley,* On the Brief), and *Alan F. Sylvester* of *Sylvester & Maley,* Burlington, for Plaintiff.

*John T. Sartore* of *Paul, Frank & Collins, Inc.*, Burlington, for Calcagni-Frazier-Zajchowski.

*Peter B. Joslin* of *Theriault & Joslin*, Montpelier, for Kenclif.

*Robinson E. Keyes* and *Mark R. Butterfield* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Hathorne.

*Robert D. Rachlin* and *Debra A. Martin* of *Downs, Rachlin & Martin*, South Burlington, for Grace.

**Hill, J.** Plaintiff, South Burlington School District (South Burlington), appeals from the entry of a judgment order on verdicts directed in favor of each defendant at the close of plaintiff's case. South Burlington claims that the trial court erred in taking the case from the jury and in support of its contention points to evidence in the record which it believes sufficiently raised issues of fact to be decided by the jury.

The relevant facts are as follows. On December 9, 1968, South Burlington contracted with Calcagni-Frazier-Zajchowski (CFZ), a partnership,[1] for the planning, design and construction of an addition to the Orchard Elementary School. CFZ drafted plans, and specifications were put out to bid. Although the original specifications called for a particular lightweight insulating roof fill, CFZ also included in the specifications an alternative calling for the use of a less expensive roofing system, Zonolite Dyzone, manufactured by defendant W. R. Grace & Company (Grace). The substitute roofing was added to the specifications in case South Burlington needed to trim costs to meet its budget after receiving the bids.

The specifications went out to bid and Kenclif Construction, Inc. (Kenclif) submitted the low bid. In order to reduce costs Kenclif and South Burlington agreed that the substitute Zonolite Dyzone system would be used. That system called for successive layers of materials, the base of which was a

---

[1] Plaintiff originally filed suit against Calcagni-Frazier-Zajchowski Architects, Inc., but upon motion was granted leave to amend its complaint to include Calcagni-Frazier-Zajchowski, the partnership. For convenience both entities will be referred to interchangeably as CFZ.

precast structural deck. A one-inch thickness of Dyfoam vent board was then to be applied to the deck and the Zonolite lightweight concrete was to be placed to a specified thickness and profile on top of the Dyfoam vent board. The Zonolite insulating concrete was then to be covered by a built-up roofing. Kenclif subcontracted with Martin Fireproofing Corp. (Martin) for the installation of the Zonolite Dyzone insulating fill, and with A. C. Hathorne Co., Inc. (Hathorne) for construction of the built-up roof. The insulation was laid by Martin on October 6, 7, and 8, 1969, and construction of the built-up roof, although originally scheduled to begin on October 15, 1969, was not commenced until the last few days of October. During the period between the scheduled commencement of construction of the built-up roof and the actual beginning of construction the roofing insulation was exposed to substantial precipitation.

In mid-May 1970, CFZ certified to South Burlington that the school addition was substantially complete. In February 1971, after the addition had been occupied, the roof split and leaking occurred. After repair efforts by the various defendants failed to remedy the problem, South Burlington hired an outside firm to correct the defects in the roof.

On July 3, 1974, South Burlington commenced this action against defendants CFZ, Kenclif, Hathorne and Grace, alleging negligence, breach of contract, and breach of express and implied warranties in connection with the design and construction of the school roof. Numerous cross-claims were filed by the various defendants, and Martin was impleaded by CFZ and Kenclif as a third-party defendant. In addition, Hathorne counterclaimed against South Burlington for the value of repair work performed on the roof.[2]

The trial court directed the verdicts at issue here ostensibly because South Burlington had failed to establish a prima facie case for relief. Plaintiff claims that the trial court erred in granting these motions since there is sufficient

---

[2] After a preliminary jurisdictional misstep, whereby appellate review was sought prior to final judgment, *South Burlington School District* v. *Calcagni-Frazier-Zajchowski, Inc.*, 136 Vt. 645, 399 A.2d 181 (1979), plaintiff brings the present appeal pursuant to certification under V.R.C.P. 54(b).

evidence in the record which fairly and reasonably tends to support its claims, and that if there are any insufficiencies in the record it is because of the lower court's errors in excluding evidence, particularly the testimony of plaintiff's expert witness. We consider plaintiff's claims in order.

## I. Directed Verdicts

In considering a motion for a directed verdict, a trial court is "required to view the evidence in the light most favorable to the plaintiff, exclude the effect of modifying evidence, and resolve all conflicts against the defendants." *Waite* v. *Brown*, 132 Vt. 20, 23, 312 A.2d 915, 915 (1973). If, after examining the evidence in this manner, it appears to the court that there is any substantial evidence which fairly and reasonably tends to support the plaintiff's claim, the case should go to the jury for resolution. *Burleson* v. *Caledonia Sand & Gravel Co.*, 127 Vt. 594, 594, 255 A.2d 680, 681 (1969); *Hedman* v. *Siegriest*, 127 Vt. 291, 293, 248 A.2d 685, 686 (1968). Moreover, in determining whether there is sufficient evidence to carry the matter to the jury, the court must focus on the tendency of the evidence, not its weight. *Lewis* v. *Vermont Gas Corp.*, 121 Vt. 168, 179, 151 A.2d 297, 304 (1959). It is not for the court to decide which of two or more conclusions that are supportable by the evidence is more correct. *Forcier* v. *Grand Union Stores, Inc.*, 128 Vt. 389, 398, 264 A.2d 796, 800 (1970). In short, the plaintiff is entitled to the strongest inferences reasonably deducible from the most favorable evidence, and insofar as the evidence "tends, in any fashion, to support" plaintiff's claim it is entitled to a jury determination of the issues. *LaRocque* v. *LaMarche*, 130 Vt. 311, 314, 292 A.2d 259, 261 (1972).

Of course, there must be a view of the evidence which supports the essential elements of the plaintiff's case. *Id.* Evidence which gives rise to a determination based on "mere conjecture, surmise or suspicion, is an insufficient foundation for a verdict." *Lewis, supra,* 121 Vt. at 179, 151 A.2d at 304.

With these standards in mind, we proceed to examine whether the plaintiff established below the necessary ele-

ments of its prima facie case against the various defendants.

## A. Defendant CFZ

Plaintiff claims that CFZ was negligent in the performance of its obligation to exercise reasonable skill and care in the design and selection of materials for the construction of the roof and that CFZ was negligent in its failure to supervise the construction project. CFZ moved for a directed verdict on these claims, raising four grounds, two of which are relevant here: first, that there was no evidence of negligence attributable to CFZ, and second, that there was no evidence of negligence attributable to CFZ which was the proximate cause of South Burlington's injury.[3]

With respect to the negligent design claim, in order to establish a prima facie case for relief South Burlington had to show that CFZ breached its duty to use reasonable care and that as a proximate result of this breach the plaintiff suffered injury. Involved here is the question of the standard of care owed by a roof designer in the performance of its obligation to design and select materials for the construction of a school building roof in 1969. While it is true, as plaintiff argues, that the defendant must exercise reasonable skill and care, the record is devoid of evidence as to what the "reasonable roof designer" would have done in a similar situation. In particular, South Burlington's argument that CFZ should have made an independent inquiry into the feasibility of using the Zonolite Dyzone system and should not have relied on the representations made by the manufacturer does not satisfy its burden of showing a failure to exercise due care. There is no evidence in the record that the Zonolite system was of inferior quality or that it was poorly suited for Vermont conditions. Without being apprised of the stand-

---

[3] CFZ's other grounds for its motion for a directed verdict were that South Burlington contracted with CFZ the partnership, not the successor corporation, and that there was no evidence that CFZ the corporation had assumed the liabilities of the partnership. Because of our resolution of the standard of care and causation issues, we need not consider these. See *Burleson, supra*, 127 Vt. at 595–96, 255 A.2d at 681.

ard to which CFZ would be held accountable a jury could not properly determine whether CFZ had failed to use the requisite care.

It is the function of the jury as the trier of fact to draw the logical inferences from the evidence in light of their experience and knowledge. Where, however, the jury is incompetent to draw those inferences because they are distinctively related to a profession beyond the understanding of the average layman, it is necessary to introduce expert testimony. See *Largess* v. *Tatem*, 130 Vt. 271, 278–79, 291 A.2d 398, 403 (1972). In the present case, the standard of care required of a roof designer in 1969 was beyond the ken of the jury. To establish its case plaintiff needed to introduce evidence of the yardstick against which CFZ's conduct was to be measured. Since South Burlington failed to do so the trial court was not in error in directing the verdict as to this claim.[4]

■ With regard to South Burlington's negligent supervision claim, the duty owed by CFZ to the plaintiff was set out in their contract. See *Lapoint* v. *Dumont Construction Co.*, 128 Vt. 8, 10, 258 A.2d 570, 571 (1969). Their agreement provided as follows:

> The Architect shall make periodic visits to the site to familiarize himself generally with the progress and quality of the Work and to determine in general if the Work is proceeding in accordance with the Contract Documents. On the basis of his on-site observations as an Architect, he shall endeavor to guard the Owner against defects and deficiencies in the Work of the Contractor. The Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, and he shall not

---

[4] Plaintiff's contention, as to all defendants, that its failure to introduce further evidence as to the standards of care required or as to causation was the result of the trial court's improper rulings is discussed in section II, *infra*.

be responsible for the Contractor's failure to carry out the Work in accordance with the Contract Documents.

In other sections, the contract provided that CFZ would not be responsible for the acts or omissions of the contractor or subcontractors, and that the contractor alone was responsible for supervision, direction and coordination of the construction.

To hold CFZ liable for breach of contract, South Burlington not only had to establish the existence of an enforceable contract but also had to show that CFZ failed to perform according to their agreement. *Lapoint, supra,* 128 Vt. at 10, 258 A.2d at 571. Viewing the contract in the light most favorable to the plaintiff, it is difficult to see how CFZ failed to perform its contractual obligations. The language of the contract is clear and unambiguous, and this Court's duty is to apply it, not remake it or ignore it. *Simpson* v. *State Mutual Life Assurance Co.,* 135 Vt. 554, 556, 382 A.2d 198, 199 (1977).

CFZ's duty under the contract in no way related to supervision of the construction project or the duties of the contractor or subcontractors. Indeed, the agreement between South Burlington and the contractor imposed the duty solely on the latter to supervise and direct the job. That the parties understood this division of responsibility is further evidenced by the fact that Kenclif, the contractor, hired a special superintendent to supervise the job.

South Burlington's claim to the effect that CFZ had a duty of care other than that specified in their agreement based on custom or usage in the industry cannot be determined on the record before us because plaintiff introduced no competent evidence that a "reasonable roof designer" would have done anything different. Without testimony by witnesses who could speak authoritatively as to the customs and usages of the roof designing and construction industry, the jury had no benchmark against which to measure CFZ's conduct. South Burlington's claim that the jury was competent to determine whether CFZ failed to meet the standard of care of a professional roof designer misperceives the relationship between the jury and expert witnesses. A jury is competent to draw logical inferences from facts within their knowl-

edge. But where, as here, the facts (*i.e.*, the customs of a profession) are outside their knowledge, competent evidence, usually in the form of expert testimony, must be adduced.

For the above-stated reasons the direction of the verdict in favor of CFZ was proper.

### B. Defendant Kenclif

South Burlington claims that Kenclif was negligent in the performance of its contractual obligation to supervise construction of the roof on Orchard Elementary School. In particular, South Burlington contends that Kenclif should have insisted that its subcontractor, Hathorne, construct the built-up roof over the newly laid insulation within the time period required by the contract, and that failing to do so Kenclif should have covered the roof with polyethylene to protect the insulation against exposure to the elements. At trial, Kenclif moved for a directed verdict on these claims, contending that there was insufficient evidence to make out a prima facie case for relief.

■■ "In the obligation assumed by a party to a contract is found his duty, and his failure to comply with the duty constitutes a breach." *Lapoint, supra,* 128 Vt. at 10, 258 A.2d at 571. In addition, accompanying every contract is an implied duty to perform with care, skill, reasonable expedience and faithfulness. See, e.g., *Gosselin* v. *Better Homes, Inc.,* 256 A.2d 629, 639–40 (Me. 1969).

■ Pursuant to its contract with South Burlington, Kenclif was obligated to supervise and direct the construction work, was solely responsible for all construction methods, sequences and procedures and for coordinating all portions of the job, and was accountable to South Burlington for the acts and omissions of Kenclif's subcontractors. That Kenclif failed to perform these duties with the requisite degree of care was amply supported by evidence adduced at trial which, if believed by the jury, provided a sufficient basis on which to predicate a verdict.

Supportive of plaintiff's claims are the facts that the construction schedule called for installation of the Zonolite Dy-

zone insulating fill on October 6, 7, and 8, 1969; that defendant Hathorne was scheduled to commence construction of the built-up roof over the insulation on October 15, 1969, but did not arrive on the job until the end of October; that during this interim period the insulating fill was not covered and substantial amounts of rain and snow fell on the partially constructed roof; and that it was Kenclif's normal procedure to cover the insulating fill if the roofer was to be delayed.

Since the evidence was sufficient to create a jury question as to whether Kenclif breached its duty of care, it remains to be determined whether South Burlington introduced sufficient evidence which, if believed, would satisfy its burden of proving causation. The evidence, viewed most favorably to the plaintiff, establishes that the insulating fill was left uncovered for approximately two to three weeks and that during that time substantial amounts of rain and snow fell; that the primary cause of failures in built-up roofs was excess water permeating the Zonolite Dyzone insulation; that the manufacturer's specifications called for special procedures should inclement weather be expected during the pouring or curing stages of the insulating fill; that tests performed on the roof showed that the insulating fill contained excessive amounts of moisture; and that the built-up roofing membrane cracked as a result of the Zonolite Dyzone insulating fill cracking beneath it. In light of this evidence we are not prepared to say as a matter of law that Kenclif's failure to cover the roof was not a substantial factor that caused the injury to South Burlington. See *Newhall* v. *Central Vermont Hospital, Inc.*, 133 Vt. 572, 575, 349 A.2d 890, 892 (1975).

██ While it is often difficult to draw the line between logical inferences and speculation, it nevertheless must be drawn. The facts in this case were vigorously disputed and were subject to different inferences. Where such a situation exists the case generally should be submitted to the jury. As the United States Supreme Court has stated:

> Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by

choosing what seems to them to be *the most reasonable inference.*

*Lavender* v. *Kurn,* 327 U.S. 645, 653 (1946) (emphasis added). Accord, *Patton* v. *Ballam,* 115 Vt. 308, 314, 58 A.2d 817, 821 (1948); *Vermont Food Industries, Inc.* v. *Ralston Purina Co.,* 514 F.2d 456, 462–63 (2d Cir. 1975) (Oakes, J.).

Defendant's argument that expert testimony was necessary to establish proximate cause is without merit. It is true, as defendant argues, that when a physical process is obscure, abstruse or so far outside common experience that lay jurors can only speculate about it expert testimony is required to explain the process. *Merrill* v. *University of Vermont,* 133 Vt. 101, 104, 329 A.2d 635, 637 (1974). But when the facts proved are such that any layman would know, from his own knowledge and experiences, that the breach of duty was the proximate cause of the injury, expert testimony is not necessary. *Id.* As stated above, there was sufficient evidence in this case from which the jury could have reasonably inferred the necessary causal connection between Kenclif's failure to cover the roof and the ultimate cracking.

Because plaintiff introduced sufficient evidence to meet its burden of showing a prima facie case for relief, the trial court's direction of a verdict in favor of Kenclif was in error.

## C. Defendant Hathorne

Plaintiff claims that defendant Hathorne was negligent in failing to perform its contractual obligation to commence construction of the built-up roof on the scheduled date. Hathorne moved for a directed verdict at trial, claiming that plaintiff failed to establish that Hathorne's breach was the proximate cause of the roof failure.

Defendant Hathorne's argument regarding proximate cause parallels that of defendant Kenclif, and the facts that we held sufficient to establish proximate cause against Kenclif are equally probative against Hathorne. To the extent that rain and snow fell on the roof after the date it was obliged to commence construction of the built-up roof, Hathorne's breach of duty was a substantial factor leading to South Bur-

lington's injury. *Newhall, supra,* 133 Vt. at 575, 349 A.2d at 892. The fact that Kenclif also may have been negligent by failing to cover the roof does not relieve Hathorne of its potential liability, for Hathorne's failure to meet its contractual obligations also contributed to South Burlington's injury.

We believe that there was sufficient evidence introduced at trial upon which the jury, acting reasonably in its fact finding function, could base a verdict in South Burlington's favor. Accordingly, the trial court's direction of a verdict in favor of defendant Hathorne was in error.

## D. Defendant Grace

South Burlington asserts that Grace breached express warranties and implied warranties of fitness for a particular purpose under 9A V.S.A. §§ 2—313 and 2—315, respectively, regarding the Zonolite Dyzone system. Grace maintains that such claim is barred by 9A V.S.A. § 2—725, since the action was commenced more than four years after the delivery of its product.[5]

Assuming, but not deciding, that Grace expressly and impliedly warranted its goods, 9A V.S.A. § 2—725, which sets forth the applicable statute of limitations for a claim arising from a breach of warranty in the sale of goods, provides:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.
>
> . . .
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the

---

[5] In support of its motion for a directed verdict, Grace also asserted that there was no evidence to prove that any warranties were given or breached; that if there were warranties that were breached, there was no evidence to show proximate cause; and that there was no privity between South Burlington and Grace. We need not reach these contentions, however, in light of our resolution of Grace's statute of limitations claim. See *Burleson, supra,* 127 Vt. at 595–96, 255 A.2d at 681.

goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Since the present action accrued before October 8, 1969, the date the roofing materials were installed, and the present action was not commenced until July 3, 1974, it is barred unless Grace's warranty explicitly extended to the future performance of the goods. Not surprisingly, plaintiff argues that the warranty did explicitly extend to future performance while Grace contends that it did not.

The negative implication of the statute is that the extension provision applies only to express warranties and not to an implied warranty of fitness, since the latter warranty is not one that "explicitly extends to future performance." See, e.g., *Sponseller* v. *Meltebeke*, 280 Or. 361, 365–66 n.2, 570 P.2d 974, 976 n.2 (1977). Therefore, to the extent that plaintiff seeks to rely on any implied warranties made by Grace its claim fails.

Moreover, with respect to plaintiff's breach of express warranty claim, since all warranties in a sense extend to the future performance of the goods, courts will not lightly infer from the language of express warranties terms of prospective operation that are not clearly stated. *Wilson* v. *Massey-Ferguson, Inc.*, 21 Ill. App. 3d 867, 315 N.E.2d 580, 583 (1974). See also J. White & R. Summers, Uniform Commercial Code § 11–8, at 341–43 (1972).

To the extent there is language of express warranty in this case, it is to the effect that the Zonolite Dyzone product "would last as long as the built-up roofing would last," that it "would do as good a job as the [roofing material originally] specified with the built-up roof of twenty years," that it performed satisfactorily in other situations, and that it was suitable for Vermont climatic conditions. To the extent these representations spoke to the future, it cannot be said that they constitute the *explicit* warranty of future performance envisioned by 9A V.S.A. § 2—725. To be explicit the representations must be clear, unambiguous and unequivocal. *Binkley Co.* v. *Teledyne Mid-America Corp.*, 333 F. Supp.

1183 (E.D. Mo. 1971), *aff'd*, 460 F.2d 276 (8th Cir. 1972). But where, as here, the words alleged to extend a warranty to future performance are so unclearly stated and are so set forth that there is doubt as to their meaning a court should not infer that more than a warranty of present characteristics, design or condition was intended. A warranty that a product is so manufactured "that it should last [20] years is a warranty of present characteristics, design and condition and should not be stretched by implication into a specific promise enforcible at the end of [20] years." *Citizens Utilities Co.* v. *American Locomotive Co.*, 11 N.Y.2d 409, 417, 184 N.E.2d 171, 174, 230 N.Y.S.2d 194, 198 (1962). Nor is the fact that South Burlington expected a durable and adequate roof, or that it relied on Grace's expertise, sufficient to raise these representations of present characteristics to explicit warranties of future performance. *Jones & Laughlin Steel Corp.* v. *Johns-Manville Sales Corp.*, 453 F. Supp. 527 (W.D. Pa. 1978).

Since South Burlington did not commence its action against Grace within four years from the date of the alleged breach of warranty, the direction of the verdict in favor of Grace was proper.

## II. Abuse of Discretion

At trial plaintiff sought to qualify its expert witness as an architectural engineer but defendants objected, contending that by allowing him to testify as an expert in that field the court would be sanctioning a violation of the criminal law since, by testifying, he arguably would be engaging in the practice of professional engineering without a license in violation of 26 V.S.A. §§ 1051–1153. After extended argument on the issue the trial court ruled that the witness was competent to testify as an expert in roof technology and design, but cautioned the witness that he might be violating the law. Plaintiff's counsel proceeded to question the witness and asked him to state his opinion as to why the roof had failed. The witness gave a brief answer to the effect that the roof failure was due to the cracking of the Zonolite Dyzone insulating system, which was in turn caused by movements in the precast concrete deck and/or the steel support frame. Coun-

sel then asked the witness whether he could "elaborate on what caused the Zonolite to crack" and whether he could "add to the explanation of the cracking of the Zonolite." Successive objections were raised to each question, all of which were sustained by the trial court. A few more questions were asked of the witness before he was excused, although the line of testimony sought to be elicited by the questions to which the objections were sustained was no longer pursued. Further examination was had of one more witness, at the end of which plaintiff sought to recall its expert witness. Defendants raised objections to the recall which were sustained by the trial court. Plaintiff claims that the trial court abused its discretion in admonishing its expert as to a potential criminal violation, in ruling that the questions posed by plaintiff were improper, and in refusing to allow the recall.

■ "The question of competency of an expert witness is a preliminary one for the trial court to determine in its sound discretion, and the court's action is not revisable on appeal unless it appears from the evidence to be erroneous or founded upon an error of law." *Alling Construction Co.* v. *Bissette*, 132 Vt. 331, 333, 318 A.2d 666, 668 (1974). Moreover, even if error is found it must be shown to have prejudiced the rights of the complaining party. *Monti* v. *Town of Northfield*, 135 Vt. 97, 99, 369 A.2d 1373, 1375 (1977).

■ Clearly the objections raised by the defendants presented the trial court with a case of first impression. On the one hand, it was apparent that this particular witness' testimony was necessary to plaintiff's case. On the other hand, defendants' objections might have appeared to some to have merit. As a result, the trial court attempted to steer a path between these competing interests. It is clear, however, that the trial court's action, based on its belief that the law might be violated, was incorrect. The statutory scheme on which defendants relied is aimed at protecting the public from the unauthorized practice of engineering; it is not meant to be used to keep properly qualified experts from testifying before a jury. But, while the trial court's action resulted in some confusion at trial, it did not, as plaintiff claims, amount to an abuse of discretion requiring reversal. This result is

manifest when it is realized that the trial court was willing to allow the witness to testify as an expert, albeit as an expert in roof technology and design rather than as an architectural engineer. Furthermore, there is nothing in the record to indicate that it was the trial court's ruling that resulted in the failure to elicit necessary testimony from the witness. Counsel was free to, and did in fact, question the witness as to the cause of the roof failure.

But, it is further claimed by plaintiff that its questioning was circumscribed by the trial court's evidentiary rulings. In support of this claim, South Burlington cites *Monti* v. *Granite Savings Bank & Trust Co.*, 133 Vt. 204, 333 A.2d 106 (1975), arguing that if it did not present its full case it was through no fault of its own but rather because of the trial court, and that, therefore, the case should be remanded. *Monti* is inapposite. In that case plaintiffs were denied the opportunity to introduce evidence on a matter in issue. In the present case, however, the plaintiff was not refused the opportunity to adduce evidence. Rather, the court ruled that the questions as posed were improper in form. The fact that it also was within the trial court's discretion to allow the witness to answer the questions as posed, if he saw fit, is not sufficient to show abuse of discretion. See, e.g., *People* v. *Belcher*, 189 Cal. App. 2d 404, 407, 11 Cal. Rptr. 175, 177 (1961) ("The rule is well settled that whether a witness shall be permitted to testify in a narrative form instead of by questions and answers, is a question for the trial court's sound discretion, and unless prejudice is shown no abuse of discretion can be found.").

Evidentiary rulings of the nature involved here are by necessity committed to the trial court, which is responsible for the orderly conduct of the trial. *Childrens' Home Inc.* v. *State Highway Board*, 125 Vt. 93, 98, 211 A.2d 257, 261 (1965). It is not the role of the reviewing court to second guess or displace the trial court's decision with its own; rather, it will reverse only when it determines that the trial court acted arbitrarily and capriciously. Furthermore, to the extent that the trial court's ruling was somehow "incorrect," as plaintiff claims, it did not result in any prejudice. South Burlington was free to rephrase the questions and continue to examine

the witness. That it failed to do so, especially without making an offer as to what the witness would have testified, is not prejudicial error resulting from an abuse of discretion on the part of the trial court.

 Finally, plaintiff's claim of abuse of discretion in refusing to allow the witness to be recalled also fails. Recall of a witness is similarly a matter committed to the sound discretion of the trial court. *Isabelle* v. *Proctor Hospital*, 133 Vt. 200, 203, 333 A.2d 118, 121 (1975). And, ordinarily, it will be granted when the party seeking recall has offered compelling reasons. But where, as here, the reasons stated are general and no offer is made as to what will be adduced, it is within the trial court's discretion to refuse to allow the recall so that the trial will proceed in an orderly manner and the jury's attention will not be lost. *Childrens' Home, supra,* 125 Vt. at 98, 211 A.2d at 261.

*The judgments entered on the verdicts directed in favor of defendants CFZ and Grace are affirmed.*

*The judgments entered on the verdicts directed in favor of defendants Kenclif and Hathorne are reversed, and the cause is remanded for a new trial.*