*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-026

JULY TERM, 2016

| | | |
|---|---|---|
| Larry Fenter | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Windsor Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| Rebecca Brown | } | DOCKET NO. 332-9-13 Wrdm |

Trial Judge: M. Kathleen Manley

In the above-entitled cause, the Clerk will enter:

Father appeals from the trial court's order assigning mother sole physical and legal rights and responsibilities (PRR) with respect to the parties' daughter, S.F., and setting a parent-child contact (PCC) schedule. He argues that (1) the PCC schedule does not maximize his time with S.F. and it disregards evidence of his role in S.F.'s life; (2) the court erred in requiring that he not work during his contact time with S.F., other than during vacations; and (3) the court erroneously denied his request to testify in rebuttal. We strike the provision that prohibits father from working during his contact time with S.F. but otherwise affirm the court's decision.

Father initiated a parentage action in September 2013. Parentage was established, but the parties reconciled and they dismissed their request to establish PRR and PCC. In June 2014, father again moved to establish PRR and PCC. Following a hearing, the court awarded sole PRR to mother and set forth a PCC schedule. It made findings on the record, including the following. The parties had an off-and-on relationship. In 2008, father permanently relocated to Vermont to be with mother. Father and mother performed shift work; mother worked from 8:00 a.m. to 4:00 p.m. and father worked from 10:00 p.m. to 6:00 a.m. Mother stopped doing shift work for a year after S.F. was born. Father continued to work the evening shift. During the first year of S.F.'s life, mother did the vast majority of caretaking; she fed and bathed S.F. and saw to her daily needs. Father helped out occasionally but his work schedule made this difficult. When mother returned to work, father switched to the 1:30 p.m. to 10:00 p.m. shift with the intent that he would provide some daytime care for S.F. After several months, the parties agreed to put S.F. in daycare. The parties shared responsibility for getting S.F. ready for daycare in the morning. Mother did the vast majority of chores, however, including shopping, cooking, cleaning, and laundry. This pattern continued until the parties ended their relationship in July 2014. While the parties were together, S.F. clearly looked to mother as the one to meet her needs and to comfort her. Mother was S.F.'s primary care provider.

Since the end of their relationship, the parties have been unable to communicate well. Father has, at times, taken an all-or-nothing position as to visitation and other issues, which resulted in him having no parent-child contact for a period. Mother has not been accommodating in allowing father to take S.F. to visit out-of-state relatives.

Father had a new partner and they lived together in a one-bedroom apartment. The court heard no evidence to suggest that father was looking for a larger residence, although he mentioned asking his landlord to give up a room. When S.F. stayed with father, father would sleep on the couch and S.F. would use his bedroom. Given the presence of father's new partner, father now sleeps on the couch, the partner sleeps on an air mattress, and S.F. sleeps in the bedroom. The court found this arrangement unhealthy and stressful for S.F., and stated that it could not continue. The court also found that father needed to be more involved in S.F.'s educational struggles.

The court then considered the statutory best-interest criteria. It found that S.F. had good relationship with both parents, and that each parent provided her with love and affection. Mother presently had a far better living situation than father. Both parents could meet S.F.'s needs and ensure that she lived in safe environment. Mother, however, was better able to meet S.F.'s present and future developmental needs as evidenced by her greater involvement in S.F.'s education. Both parents struggled in their relationship with each other. Mother was S.F.'s primary care provider, which was a significant factor. On balance, the court found that S.F.'s best interests were served by mother having sole legal and physical PRR.

As to PCC, the court stated that it was not yet prepared to allow a fifty-fifty split of time as father requested. Father still needed to show that he could find adequate housing and become more involved with S.F.'s education. The court thus continued the current PCC schedule of every other Friday from 5:00 p.m. to Monday at 7:30 a.m. and every Wednesday from 5:00 p.m. to Thursday at 7:30 p.m. The court addressed holidays and added significant vacation time to the PCC schedule as well. Finally, the court stated that father must not be working when S.F. was in his care unless it was a scheduled vacation time during which time S.F. could be placed in an agreed-upon daycare at father's expense. This provision stemmed from the court's concern about father's prior history of working six-to-seven days per week. The court indicated that there was no point in father having visitation if he was working during such time. The court issued a written order setting forth its decision, and this appeal followed.

Father first challenges the PCC schedule. He argues that the schedule violates 15 V.S.A. § 650, which declares as public policy that it is in a child's best interests "to have the opportunity for maximum continuing physical and emotional contact with both parents, unless direct physical harm or significant emotional harm to the child or a parent is likely to result from such contact." According to father, because S.F. loves him, he is a good parent, and there is nothing to suggest that S.F. would be harmed by contact with him, the court should have awarded him the level of PCC that he requested. In a similar vein, father argues that the PCC schedule is too limited and does not serve S.F.'s best interests because he has a good relationship with S.F., he loves her, and he tends to her needs. Father states that his actions show him to be responsible engaged parent, and he cites evidence presented at trial to this effect.

As an initial matter, the court is not required by the legislative policy expressed in 15 V.S.A. § 650 to award parents fifty-fifty contact time even if they are both good parents and their children love them. The court must be guided by the best interests of each particular child in each specific case. See id. § 665(b) (providing that court must be guided by child's best-interests and must consider statutory best-interest factors in making its decision). The court has broad discretion in setting a visitation schedule, and we will uphold its decision unless its discretion "was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." Cleverly v. Cleverly, 151 Vt. 351, 355-56 (1989) (quotation omitted). Father fails to show an abuse of discretion here.

2

The court recognized father's positive parenting attributes, including the fact that he had a good relationship with S.F. and provided her with love and affection. Nonetheless, the court was concerned about father's living situation as well as his limited involvement in S.F.'s education. Based on these concerns, the court concluded that a fifty-fifty split of time was not appropriate at this juncture. Father's disagreement with the court's conclusion does not warrant reversal. See, e.g., Meyncke v. Meyncke, 2009 VT 84, ¶ 15, 186 Vt. 571 (explaining that arguments which "amount to nothing more than a disagreement with court's reasoning and conclusion . . . do not make out a case for an abuse of discretion"). It is for the trial court to weigh the evidence, and we defer to its judgment on appeal. See Hanson-Metayer v. Hanson-Metayer, 2013 VT 29, ¶ 12, 193 Vt. 490 ("In the highly fact-intensive context of a custody determination, we rely on the family court's determinations of fact and evaluations of credibility." (quotation omitted)). In a similar vein, we reject father's assertion that the visitation schedule violates the Legislature's directive that children should "have the opportunity for maximum continuing physical and emotional contact with both parents." 15 V.S.A. § 650. While father may not have as much time with S.F. as he would like, he has been granted significant contact, consistent with what the court found appropriate under all of the circumstances. The schedule does not contravene the statute. LeBlanc v. LeBlanc, 2014 VT 65, ¶ 26, 197 Vt. 17 (considering and rejecting similar argument).

Father next argues that the court erred by ordering that he not work during his PCC time with S.F. unless it was during a vacation period. Father maintains that this provision is unrelated to his fitness as a parent and does not directly affect S.F.'s welfare. Ultimately, he asserts that this provision is unnecessary as he has altered his prior work schedule to facilitate parent-child contact.

We agree with father that, given the findings in this case, the provision should be stricken. In reaching our conclusion, we recognize that the trial court "may impose conditions on visitation if clearly required by the child's best interests." Miller v. Smith, 2009 VT 120, ¶ 5, 187 Vt. 574 (mem.). In this case, however, the trial court did not make any findings to show why this restriction clearly served S.F.'s best interests. In discussing this provision, the court expressed concern about the number of hours that father worked, indicated that father needed more stability about where he would be living, and questioned who would be providing care for S.F. in father's absence. The court raised no such concerns about how the child would be cared for during mother's work hours and did not identify any reasons why this child's best interests would be undermined if a third party cared for the child during times when the child is staying with father as opposed to with mother. S.F. is part of father's household during her visits. While the court observed that there would be "no point" in having parent child contact if father was not present, we conclude that in the absence of evidence that father works excessive hours during the child's time with him, or that his child care arrangements are contrary to the child's best interests, father has the flexibility to decide how to best use his parent-child contact time. For that reason, we find the no-work provision "clearly unreasonable," and therefore strike it from the court's decision. Palmer v. Palmer, 138 Vt. 412, 414-15 (1980) (recognizing that trial court has discretion in imposing conditions on visitation, and that its decision will be upheld unless exercise of discretion is "clearly unreasonable or untenable").

Finally, father argues that the court denied him the ability to fully present his case because his attorney was not allowed to call him as a second rebuttal witness. Father states that he would have testified about Facebook messages that he sent to mother about S.F.'s health. According to father, this would have contradicted mother's testimony that she was unsure

whether she had exchanged Facebook messages with father about S.F.'s health and would have shown his parental involvement.

As father acknowledges, "[r]ecall of a witness is . . . a matter committed to the sound discretion of the trial court." S. Burlington Sch. Dist. v. Calcagni-Frazier-Zajchowski Architects, Inc., 138 Vt. 33, 52 (1980). Even if the court abused its discretion in refusing to allow him to retake the stand, father fails to show any prejudice. The question of whether father exchanged Facebook messages with mother about S.F.'s health had no bearing on the court's decision. The court recognized that father was an involved parent, with the exception of his more limited role in S.F.'s education. It was father's limited engagement in S.F.'s education as well as his inadequate housing that drove the court's PCC decision. We find no error.

The provision prohibiting father from working during his parent-child contact with S.F. is stricken. The court's decision is otherwise affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice