# STATE OF VERMONT

**SUPERIOR COURT**                    **ENVIRONMENTAL DIVISION**

| | |
|---|---|
| **LEDUC CONSTRUCTION, LLC CONDITIONAL USE APPEAL** | **Docket No. 102-7-14 Vtec** |
| **LEDUC CONSTRUCTION, LLC VARIANCE APP. APPEAL** | **Docket No. 119-10-15 Vtec** |

## Decision on the Merits

Leduc Construction, LLC ("Applicant" or "Appellant"), by and through its principal, Andre Leduc, seeks permit authority to excavate its property along Vermont Route 78 in the Town of Highgate so it may extract and sell what is anticipated to be high-quality sand for use on construction projects. When its application for conditional use and a setback waiver was denied by the Town of Highgate Development Review Board ("DRB"), Applicant appealed to this Court. That appeal was assigned Docket No. 102-7-14 Vtec.

While that appeal was pending, Applicant also applied for a variance from the setback minimums from the side and rear boundaries. When its variance application was also denied by the DRB, Applicant appealed that determination to this Court as well. That appeal was assigned Docket No. 119-10-15 Vtec.

At the time of trial, Applicant was represented by Attorney Lisa B. Shelkrot. The Town of Highgate ("Town") has appeared and actively participated in each of the pending appeals, with the assistance of its attorney, Edward G. Adrian. No other party has entered an appearance in either of the appeals.

The parties endeavored to resolve their disputes through informal discussions. When those efforts failed, the Court initially set the first appeal for trial on August 20, 2015. However, the parties jointly requested that the Court delay that trial, as they anticipated that the variance application that was then pending before the DRB would result in a second appeal to this Court. The Court therefore cancelled the August 20, 2015 trial and awaited a determination on the

1

variance application and possible appeal. When that DRB determination was appealed to this Court, the Court coordinated both matters to be jointly tried.

That coordinated trial occurred on April 27, 2016. On the morning of the trial, the Court conducted a site visit with the parties and their counsel. Once the trial was completed, the parties were afforded an opportunity to file proposed Findings of Fact and Conclusions of Law. Those post-trial filings were completed on May 31, 2016 and these coordinated appeals thereafter came under advisement for the Court's consideration. Other hearings and writing responsibilities prevented the Court from completing its research and drafting on this Merits Decision until just recently. The Court apologizes to the parties and their counsel for its delay.

Based upon the credible evidence admitted at trial, which the site visit helped put into context, the Court renders the following Findings of Fact, Conclusions of Law, and the accompanying Judgment Order.

**Findings of Fact**

1.      Applicant owns a 5± acre parcel at 835 Vermont Route 78 in Highgate, Vermont ("the Property").

2.      The Property is narrow and deep, being about 224 feet wide in the front (adjoining Route 78) and rear, and about 1,250 feet along each side boundary. The property is mostly undeveloped, save for a trailer and septic system on the front portion of the lot, and is mostly open and lacking of trees, save for tall white pine trees that border the Property along the entire length of the two side and rear boundaries.

3.      The Property is located in the Town of Highgate Industrial/Commercial Zoning District ("I/C District").

4.      The surrounding neighborhood includes several commercial developments, including a former landfill, the Franklin County Field Days site, a trucking office and depot (Charlebois Trucking) and a construction company office (owned and operated by Mr. Leduc).

5.      There are no residential properties in the immediate vicinity of the Property. During the proceedings on both applications before the DRB, no interested party (other than the Town) appeared or voiced concerns about the Leduc sand extraction operation.

2

6. Mr. Leduc discovered that the property contains deposits of what is believed to be high-quality sand. Sand of this high quality is most suitable for use when constructing commercial and residential on-site sewage disposal systems that require a mound or other deposit of imported soils to host the leaching component of the sewage disposal system.

7. This type of high-quality sand has been extracted from several other area sand pits, but the existing pits are approaching the end of their usable life. The supply of high-quality sand is becoming more scarce in this region.

8. Prior to applying for any municipal zoning permits, Applicant began extracting sand from the Property. Mr. Leduc professed to have been unaware that a permit was required for his sand extraction activities.

9. Once Mr. Leduc was made aware that permits were required for his planned extraction activities, he stopped the pre-permit excavation and Applicant applied for conditional use approval.

10. Because of the narrowness of the Property, Applicant concluded that it needed to conduct its sand excavation work within the 150-foot side- and rear-yard boundary setbacks. Applicant therefore included a request for a waiver from the setback limitations in his conditional use application. If Applicant were required to respect the 150-foot side yard setbacks, it would not be able to conduct any excavation activities, given that the Property is no more than 274 feet wide.

11. Applicant proposes to excavate and extract sand up to fifty feet from the side and rear boundary lines of its Property. A set of site plans, consisting of six pages, was admitted at trial as Exhibit 5.

12. The proposed excavation and extraction will be conducted in three phases over an estimated period of two and a half years. The excavation activities would occur on the back 3± acres of the Property, with the 2± acres closest to Route 78 remaining undisturbed, save for some improvements to the internal roadway that will be used by excavation trucks and equipment. See Exhibit 5, at page C-1.

13. Excavation of the 3± acres will occur in three phases, with each phase to encompass about 1± acre of the Property. Phase 1 will occur on the acre approximately in the middle of the

3

Property, with the subsequent Phase 2 and Phase 3 to occur on each of the 2± acres at the rear of the Property.  Id.

14.     Within each Phase, the open extraction area will be approximately 125 feet by 200 feet. Exhibit 5 at pages C-2, C-3, and C-4.  The excavation will create a depression in the land that will be no more than thirteen feet below the existing ground level.  The excavated area will stop at fifty feet from the side and rear boundaries.

15.     As the high-quality sand is extracted from each Phase of the site, Applicant proposes to truck the extracted sand to another site for storage and sale.  No sand will be stored, displayed, or sold on the Property.

16.     As the high-quality sand is extracted from each Phase, Applicant proposes to bring lesser-quality sand onto the site from another location.  This imported sand will be used to backfill the excavated area, with the goal being to return the Property to the same level and grade as presently exists.  Applicant also proposes to bring topsoil onto the Property and will thereafter grade, seed and mulch the topsoil for growth.  The topsoil that once was on the property was removed years ago.

17.     Sand extraction would occur during the non-winter months, for a total of 180 days each year.  The excavation activities would take place during the weekdays, from 7:30 AM to 4:00 PM. There would not be any commercial operation on the Property during the weekends.

18.     Phases 1 and 2, once all excavation is complete, will result in about 9,600 cubic yards of high-quality sand being extracted and trucked off site.  Phase 3 will result in about 6,500 cubic yards of high-quality sand being extracted.  A similar volume of lesser-quality sand will be brought on site to complete the planned remediation.

19.     Trucks that carry the excavated sand and the replacement sand will result in up to thirty vehicle trips (round trips) per week.  This will not cause more than a minor increase in traffic on Route 78, given that this highway experiences between 3,000 to 5,000 one-way vehicle trips per day in the vicinity of Applicant's Property.

20.     Once the excavation and refilling with replacement sand and topsoil is completed in all three phases, the Property will have the same contours and elevations as currently exist.

4

21.    In anticipation of receiving conditional use approval for its sand extraction operation, Applicant also requested and received approval from the Vermont Agency of Transportation to widen its curb cut on Route 78, to accommodate a widened internal access road.  The Agency has issued a letter of intent for the planned access way widening.

22.    Mr. Leduc has calculated that the performance bond required by the applicable regulations, to assure completion of his remediation plans, should equal $3,900.00 per acre.  There was some dispute at trial as to whether the required bond should simply total $3,900.00 for the entire Property.  Given the anticipated remediation work to be performed, we conclude that the total bond, if conditional use approval was to be granted, should be $19,500.00 ($3,900.00 multiplied by five acres).

## Conclusions of Law

Due to the narrowness of the Property, an essential component of the proposed Leduc sand extraction project is authority to conduct excavation activities up to 50 feet from the side and rear boundaries, either by a waiver from the applicable minimum setback requirements or, failing that, with a variance from those same requirements.  We therefore first address the propriety of Applicant's requests that a waiver or variance be granted.

### I.    Applicable Setback Limitations

At the time of the filing Applicant's conditional use application, area land uses and development were governed by the Town of Highgate Vermont Zoning Bylaws and Map, as last amended on June 23, 2011 ("2011 Bylaws", a copy of which was admitted at trial as Exhibit 1).  These Bylaws were amended while the conditional use application was pending before this Court, but prior to Applicant submitting its variance application.  See Town of Highgate Development Regulations, adopted by the Town of Highgate Selectboard on March 5, 2015 ("2015 Regulations", a copy of which was admitted at trial as Exhibit 2).  We therefore evaluate the pending conditional use application for conformance with the 2011 Bylaws and the variance application for conformance with the 2015 Regulations.

The 2011 Bylaws[1] have specific provisions that apply to sand and gravel excavation operations, requiring that the proposed excavation must receive conditional use approval, an approved rehabilitation plan and performance bond, a showing of improvements to the land after remediation, erosion prevention measures, limitations on machinery and equipment, and minimum slope requirements. 2011 Bylaws §§ 600, 600.1, 600.2, 600.3, 600.5, and 600.6. Most applicable to the legal issue presently before us is a requirement that "[n]o excavation, blasting, or stock piling of materials shall be located within one hundred fifty **(150) feet** of any street or other property line." 2011 Bylaws § 600.4 (emphasis in original). This setback requirement is much greater than the setback requirements for other development in the I/C District. See 2011 Bylaws § 810 (requiring a minimum 30-foot setback from side yards and a minimum 85-foot setback from the front and rear yards when property adjoins a state highway).

We conclude that the proposed project must respect a minimum 150-foot setback from the side, front and rear boundaries, unless a waiver or variance is appropriate to grant.

II.     **Waiver Provisions**

If the applicable setback provisions are not the subject of a waiver or variance, Applicant will not be able to conduct any of the proposed extraction. We therefore review the applicable provisions of the 2011 Bylaws that govern Applicant's request of a setback waiver.

There is no waiver authorization in the 2011 Bylaws within the specific sections that govern sand and gravel extractions. See 2011 Bylaws § 600. However, in the sections that pertain to general developments that are required to receive conditional use approval, there is a provision that allows for the waiver of setbacks for "principal and accessory structures." Applicant asserts that its planned excavation is a "structure" and that this waiver provision is therefore applicable to its project. For the reasons detailed below, we conclude that the proposed excavation is not a "structure" and that the waiver provisions are therefore not applicable to the proposed project.

---

[1] The 2015 Regulations also has a specific provision governing the excavation soil, sand, gravel and stone that includes the essential terms of 2011 Bylaws §§ 600, 600.1, 600.2, 600.3, 600.5, and 600.6, but also added additional terms and criteria for these excavation activities. See 2105 Regulations § 6.7. Included in the retained provisions are side, front and rear setback minimums of 150 feet. 2015 Regulations §6.7(A)(8).

The 2011 Bylaws define structure as "[a]nything constructed, erected or placed **for more than six months** which requires a fixed location on the ground in order to be used." 2011 Bylaws Article IX: Definitions (emphasis in original). Excavation is not specifically mentioned in this definition, and the definition appears to be at odds with the general understanding of excavation, which does not occur "on the ground," but rather in or below the ground. Applicant's proposal is to excavate into and below the ground, so that it may extract the sand within the ground.

In addition, the proposed project does not call for anything to be "erected or placed" on the Property. In fact, Appellant stated in its variance application that the proposed "excavation use, such as is proposed here, is <u>less</u> intrusive than a structure would be . . .." Exhibit 4 (Variance Application) at 6 (emphasis in original).

The project wholly consists of excavating valuable sand from within the ground and trucking it off site. During the project's estimated two-and-a-half-year life span, it will not be located "in a fixed location." Rather, the planned excavation will move across three acres of the site, in three phases, with the excavation moving and changing locations as sand is extracted and new, inferior sand is brought in as part of the reclamation.

During the trial, at the end of Applicant's case in chief, the Town moved for a directed verdict. The Court split its analysis of the Town's request into two components: a directed verdict on the legal question of whether Applicant had made a sufficient showing on whether it is entitled to a waiver, or whether it is entitled to a variance. As to the waiver question, the Court denied the Town's request for a directed verdict. That ruling, which focused primarily on whether Applicant had made a sufficient showing that its planned excavation could be defined as a structure under the 2011 Bylaws, was made before the completion of the evidentiary portion of the trial and was not a final determination. Rather, when considering the Town's motion for a directed verdict, we considered the evidence that had thus far been admitted in the light most favorable to Applicant, the non-moving party, and disregarded any evidence contradicting the evidence that supported Applicant's claims. So. Burlington School Dist. v. Calcagni-Frazier-Zajchowski Architects, Inc., et. al., 138 Vt. 33, 40 (1980). When considering such a pre-judgment motion, we are counselled that the non-moving party "is entitled to the strongest inferences reasonably deducible from the most favorable evidence, and insofar as the evidence 'tends, in

any fashion, to support' plaintiff's claim it is entitled to" allow the trial to continue and reach final judgment. Id. (quoting in part LaRocque v. LaMarche, 130 Vt. 311, 314 (1972)).

Having received all evidence, and having the opportunity to complete more detailed research on this legal issue, we conclude that Applicant's proposed excavation project does not fit within the definition of structures provided in the 2011 Bylaws.

Our determination here is supported by similar determinations made by our Supreme Court. In particular, that Court has concluded that excavation activities to build a moto-cross track in a residential neighborhood did not equate to the building of a "structure." See Laberge Moto-Cross Track, 2011 VT 1, 189 Vt. 578. Of note to our analysis here is that the applicable zoning regulations in Laberge defined the term "structure" in a manner nearly identical to the definition from the 2011 Bylaws. Id. at ¶ 10 (defining structure as "anything constructed, erected, or placed and which requires a fixed location on the ground in order to be used . . .." *quoting* Town of Hinesburg Zoning Regulations § 9.1 (2005)). Given the near identical definition for the term, we conclude that Laberge provides controlling case law precedent.

In addition, we find persuasive the statutory definition of "structure" found at 24 V.S.A. § 4303(27) (defining a structure as "an assembly of materials for occupancy or use, including a building, mobile home or trailer, sign, wall, or fence."). While this statutory definition does not eclipse the definition provided in the 2011 Bylaws, we take it as a memorial of the common understanding of how the term is commonly defined. We conclude that the fact that this statutory definition is part of the state law that enables Vermont municipalities to implement zoning regulations provides some guidance for our effort to understand the established definition for the term.

III.     **Variance Provisions**

In response to the Town's motion for a directed verdict at the conclusion of Applicant's case in chief, the Court announced its conclusion that Applicant had not presented sufficient evidence to show that it was entitled to the requested variance. Because of this determination, the Court entered a directed verdict against Applicant and in the Town's favor on the variance

8

question.  See Trial Transcript at 180–181.[2]  Nothing revealed in the rest of the evidentiary portion of the trial or the Court's subsequent legal research has convinced us to reconsider and change our directed verdict determination.  We provide a summary of our analysis here for the sake of clarity, and to memorialize our determination.

All Vermont municipalities are authorized to enact zoning provisions that allow for variances from the applicable bylaws, provided that the evidence presented allows the appropriate municipal panel, or this Court on appeal, to render findings as to five statutorily-defined issues.  24 V.S.A. § 4469(a).  Those same five variance criteria are repeated at 2015 Regulations § 3.6(C).  To obtain a variance, the evidence must support a positive finding on each of the five variance criteria.  Id.

In rendering a determination on the Town's directed verdict request, the Court focused its analysis on the two variance criteria where the evidence, even when viewed in the light most favorable to Applicant, did not support positive findings.  Our research and analysis of the evidence presented at trial causes us to reach that same result today.  Specifically, we concluded then, and repeat that conclusion now, that (1) there are alternate developments that would be permitted for the Property that would allow it to be developed in strict conformity with the applicable Bylaw provisions (pursuant to 24 V.S.A. § 4469(a)(2) and 2015 Regulations § 3.6(C)(2)) and, (2) the requested variance does not represent "the minimum variance that will afford relief [to Applicant] and will represent the least deviation possible from the Zoning Bylaws and from the [applicable Town] Plan."  24 V.S.A. § 4469(a)(5) and 2015 Regulations § 3.6(C)(5).

There are several other types of developments permitted in the I/C District that Applicant could pursue that would not require a variance from the applicable setback provisions, including a contractor yard, a public facility, an indoor recreation facility, a warehouse, or an aircraft hangar.  2015 Regulations § 2.5.  In fact, if the Property were to instead be developed for one of these permitted uses, the setback distances would be much narrower than those required for excavation activities.  See 2015 Regulations § 2.6 (limiting the side and rear setbacks in the I/C

---

[2] The Town on May 27, 2016, supplied a transcript of the merits hearing when it filed its proposed Findings of Fact and Conclusions of Law.

District to 30 feet and the front yard setback, when on a state highway, to 85 feet, when the proposed development is not an excavation project).

Because the evidence presented does not support a positive finding on variance criteria (2) and (5), we conclude that we cannot grant Applicant the requested variance from the side and rear yard setback minimums.

**IV.    Conditional Use Provisions**

As noted above, the 2011 Bylaws require that any proposed sand and gravel excavation projects must receive conditional use approval. 2011 Bylaws § 600. We therefore review the applicable conditional use provisions, found at 2011 Bylaws Art. V.

Section 502.1 provides the five general standards which govern conditional uses. The credible evidence presented leads this Court to conclude that the proposed sand extraction operation and reclamation will not have an undue adverse effect upon (A) the capacity of existing or planned community facilities; (B) the character of the area affected, as defined by the purposes of the zoning district in which the project is located; (C) traffic on the area roads and highways; or (E) the utilization of renewable energy resources.

We conclude, however, that the proposed project has two deficiencies that compel us to deny it conditional use approval: first, because the project cannot be granted a waiver or variance from the applicable side- and rear-yard setbacks, we conclude that the project will not conform to and will therefore have an undue adverse effect upon the applicable zoning bylaws; 2011 Bylaws §502.1(D) requires such a showing for conditional use approval. Secondly, 2011 Bylaws §502.1(B) requires a showing that the proposed project conforms to the "specifically stated policies and standards of the municipal plan." We did not receive a sufficient showing of what standards from the Town of Highgate Town Plan would be applicable to the proposed project, nor a showing of how the project conforms to those applicable policies and standards.

For all these reasons, we conclude that Applicant's proposed sand extraction operation is not entitled to conditional use approval.

**Conclusion**

For all the reasons stated above, we conclude that the application of Leduc Construction, LLC to excavate and extract high-quality sand from its property at 835 Vermont Route 78 in

10

Highgate, Vermont, is not entitled to a waiver or variance from the setback limitations found in the applicable zoning regulations, and is also not entitled to conditional use approval for its proposed project. We therefore **DENY** each of the pending applications and **AFFIRM** the denials issued on June 12, 2014 and September 10, 2015, by the Town of Highgate Development Review Board

A Judgment Order accompanies this Merits Decision. This completes the current proceedings pending before this Court.

Electronically signed on December 29, 2016 at Brattleboro, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division